RHODES v. UNITED STATES (No. 585).[1]

DIRECT SHIPMENT FROM THE PHILIPPINES.

The importation was of sponges, and these, it appears, were dispatched, freight prepaid, from Zamboanga via Hongkong and Tacoma, Wash., to Chicago. They were delivered by the agents on board a vessel lying in or off the port of Hongkong. The evidence to this effect makes a *prima facie* showing that the goods were shipped direct, and there being no evidence to show there was any delay in the course of the shipment, the consignment was entitled to free entry under section 5, tariff act of 1909, governing articles the growth or product of the Philippine Islands.—United States v. United Cigar Stores Co. (1 Ct. Cust. Appls., 450; T. D. 31505).

## United States Court of Customs Appeals, May 22, 1911.

APPEAL from Board of United States General Appraisers, Abstract 24523 (T. D. 31182).

[Reversed.]

Lester C. Childs for appellant.

D. Frank Lloyd, Assistant Attorney General, for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The importation in question consisted of 33 bales of sponges shipped to James H. Rhodes & Co., at Chicago, Ill., from Zamboanga, Moro Province, P. I., via Hongkong and Tacoma, Wash., per steamer *Changsha.*

The goods were assessed for duty at 20 per cent ad valorem and are claimed to be free of duty under section 5 of the act of August 5, 1909, as "articles the growth or product of * * * the Philippine Islands," and that they come within the proviso of that section, which reads as follows:

And provided further, That the free admission, herein provided of such articles the growth, product, or manufacture of the United States, into the Philippine Islands, or of the growth, product, or manufacture, as hereinbefore defined, of the Philippine Islands into the United States, shall be conditioned upon the direct shipment thereof from the country of origin to the country of destination.

The board overruled the protest on the ground that the direct shipment from Zamboanga to Chicago with transshipment at Hongkong was not proved. The basis of this ruling was that certificate of origin was deemed by the board to have been too late, as it was made long after the importation. But it bears date the 27th of September, 1909, and as the shipment had been made before that date, and as the certificate of origin was made almost immediately after the regulation requiring it was prescribed, we think this criticism is not justified.

The case is therefore not distinguishable from United States v. United Cigar Stores Co. (1 Ct. Cust. Appls., 450; T. D. 31505), if there is evidence in the record which justifies us in holding that the goods were shipped by vessel to be transshipped at Hongkong and were there transshipped.

---

[1] Reported in T. D. 31637 (20 Treas. Dec., 1113).

The consular invoice states that the goods were sold to the consignees and dispatched from Zamboanga via Hongkong and Tacoma, Wash., per steamship *Changsha*. At Hongkong the bill of lading shows, "Shipped or delivered for shipment in apparent good order by Butterfield & Swire, as agents, on board the steamship *Ning-chow*, lying in or off the port of Hongkong * * *" the goods in question, "ex *Changsha* a Zamboanga," and notes "Freight paid in Zamboanga."

We think this sufficient *prima facie* to show that the goods were shipped direct and without any intention of delaying shipment in the port of Hongkong, and there is nothing in the record to show that they were so delayed. The case falls within United States *v.* United Cigar Stores Co., *supra*.

The decision of the Board of General Appraisers is *reversed*.