UNITED STATES *v.* EMBOSSING Co. *et al.* (No. 748).[1]

"PLASTICINE" AND "PLASTILINA," NONENUMERATED MANUFACTURES.

Earthy and mineral substances are not dutiable under paragraph 95, tariff act of 1909, but articles made out of earthy or mineral substances are—that is to say, articles that are something more than the material out of which they are made, being distinguishable from the mass out of which they were developed by a definite shape and form adapted to a final use.—Salomon *v.* United States (2 Ct. Cust. Appls., 92; T. D. 31635); United States *v.* Tamm & Co. (2 Ct. Cust. Appls., 425; T. D. 32173).

United States Court of Customs Appeals, May 8, 1912.

APPEAL from Board of United States General Appraisers, Abstract 26362 (T. D. 31832).

[Affirmed.]

*William L. Wemple*, Assistant Attorney General (*Leland N. Wood*, assistant attorney, on the brief), for the United States.
*Brown & Gerry* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Two kinds of modeling material, one known as "plasticine" and the other as "plastilina," which were imported at the port of New York, were classified by the collector of customs as "articles composed wholly or in chief value of earthy or mineral substances," and assessed for duty at 35 per cent ad valorem under paragraph 95 of the tariff act of 1909, which said paragraph reads as follows:

95. Articles and wares composed wholly or in chief value of earthy or mineral substances, not specially provided for in this section, whether susceptible of decoration or not, if not decorated in any manner, thirty-five per centum ad valorem; if decorated, forty-five per centum ad valorem; carbon, not specially provided for in this section, twenty per centum ad valorem; electrodes, brushes, plates, and disks, all the foregoing composed wholly or in chief value of carbon, thirty per centum ad valorem.

---

[1] Reported in T. D. 32536 (22 Treas. Dec.; 857).

The importers protested that the merchandise was not composed wholly or in chief value of earthy or mineral substances, but that the goods were manufactures not provided for and therefore dutiable at 20 per cent ad valorem under the provisions of paragraph 480, which reads as follows:

480. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles, not enumerated or provided for in this section, a duty of ten per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this section, a duty of twenty per centum ad valorem.

The Board of General Appraisers sustained the protest and the Government appealed.

Plasticine is claimed by the importers to be made up of water, vaseline, chalk, flour, tallow, and sulphur mixed together by a secret process. According to the chemical analysis submitted by the chemist in charge of the laboratory attached to the appraiser's office at New York, plasticine is composed of sulphur, saponifiable oil, unsaponifiable matter, calcium sulphate, alumina, and a trace of zinc. In addition to these components the chemist reported that one of the samples contained some oxide of iron. We take it, however, that the composition of the merchandise as found by the appraiser's office does not materially differ from that claimed by the importers.

In the protest of the importers and the report of the deputy appraiser plastilina is characterized as a modeling clay, but apart from that there is nothing in the record indicating the manner of its making or that of which it is composed.

The Government contends that as plasticine and plastilina are made from earthy or mineral substances they fall strictly within the provisions of paragraph 97 and are therefore dutiable thereunder. The importers concede that the ingredients of both kinds of modeling materials are of earthy or mineral origin and that the mingling of them together constitutes a manufacturing process. The claim of the Government and the admission of the importers as to the composition of the importation really leaves but one question to be determined here, and that is, Are the goods "articles" or "wares" within the meaning of paragraph 95 ? As was well said by Judge Lacombe, speaking for the Circuit Court of Appeals in Dinglestedt *v.* United States (91 Fed. Rep., 112)—

The phrase "all articles composed of mineral substances," standing alone, is one of great breadth, and would cover a great multitude of articles of the most diverse character.

In fact, considering that "article," in its largest sense, may be applied to almost every separate substance or material, and that the mineral kingdom divides honors with the animal and vegetable kingdoms, the phrase "all articles composed of * * * mineral substances" would, in its widest acceptation, embrace about everything which was not animal or vegetable matter.

Manifestly, the reversal or affirmance of the decision of the board depends upon whether the paragraph shall receive the broadest construction which its language permits, or a restricted meaning which will either exclude the mineral substances of which the modeling material is made or limit "articles and wares" to such things as have received a specific, definite form for ultimate use. In the Dinglestedt case, just referred to, it was held that the phrase "all articles composed of * * * mineral substances" was not used in its broadest sense in paragraph 86 of the tariff act of 1894, and that it was limited to articles composed of mineral substances similar to those enumerated in Schedule B, if not to those mentioned in the subdivision of which the paragraph formed a part. Whether the interpretation there adopted still holds good notwithstanding the modifications to which both schedule and subdivision have been subjected we deem it unnecessary to decide, in view of the fact that we think the case may be disposed of on a judicial interpretation of the meaning of "articles and wares," which seems not to have been modified but tacitly approved by subsequent legislation.

The prototype of the paragraph here under consideration was paragraph 86 of the tariff act of 1894, which reads as follows:

86. All articles composed of earthen or mineral substances, including lava tips for burners, not specially provided for in this act, if decorated in any manner, forty per centum ad valorem; if not decorated, thirty per centum ad valorem.

This paragraph was construed by the Board of General Appraisers in the matter of the protest of Ramsperger & Co. (T. D. 16584). In that case the board was called upon to determine the dutiable status of a metal polish which was a mechanical mixture of oxide of iron with vegetable or mineral grease, and this commodity, which was known as "Putz Pomade," was assessed by the collector under the paragraph just referred to as an article composed of earthy or mineral substances. The board held that paragraph 86 was not intended by Congress to cover everything that was wholly or in chief value of mineral origin, and that a substance which had no definite form, such as metal polish, was not subject to its operation. Subsequent to this decision paragraph 86 of the tariff act of 1894 was recast and appeared in the tariff act of 1897 as paragraph 97, which reads as follows:

97. Articles and wares composed wholly or in chief value of earthy or mineral substances, or carbon, not specially provided for in this act, if not decorated in any manner, thirty-five per centum ad valorem; if decorated, forty-five per centum ad valorem.

It will be noted that the new provision was broadened so as to include wares as well as articles composed wholly or in chief value of earthy or mineral substances. Nevertheless, the board, when it came to consider paragraph 97 in the case of Gabriel & Schall (T. D. 19628), adhered to the ruling made on the protest of Ramsperger & Co., *supra*, and declared, in July, 1898, that ground talc,

which is certainly a mineral substance in the ordinary sense of the term, had not received a *specific form for definite and ultimate use,* and was therefore not dutiable under paragraph 97, but under section 6 as a manufacture not enumerated. In discussing the protest in Gabriel & Schall, the board said:

It would seem hardly reasonable to construe the paragragh (97) in its broadest sense. If we did, water would be dutiable under it, for water is an article composed wholly of a mineral substance. And it appears somewhat incongruous to classify an impalpable powder like ground talc as an article or ware not decorated in any manner.

The origin of the provision for articles composed of earthen or mineral substances dates back probably to a decision rendered by the board in 1891 (G. A. 949). The board held that certain decorated earthen blocks made of a mixture of sand and chalk cemented together with linseed oil under pressure was not earthenware or any variety of ceramic ware. Such articles were clearly covered by paragraph 86 of the act of 1894 and paragraph 97 of the act of 1897.

The earthenware schedule contains five paragraphs, 94–98. Paragraphs 94, 95, and 96 provide for ceramic wares. Paragraph 98 provides for gas retorts, lava tips, electric carbons, and porous carbon pots. All of these articles are of specific form and are complete manufactures for definite and ultimate use; but ground talc is imported chiefly for making soap. It is in an advanced or partly manufactured condition, but it in no way resembles any of the articles named in the earthenware schedule. While this fact is not controlling, it is persuasive of congressional intent.

The decision of the board was affirmed by the Circuit Court of Appeals for the Second Circuit in United States *v.* Gabriel & Schall (suit A2793). The Government took no further proceedings and acquiesced in the conclusions reached by the board and the Circuit Court of Appeals.

Paragraph 95 of the tariff act of 1909, as may be seen by comparison, made no material change in the law as it stood in paragraph 97 of the tariff act of 1897 save and except that it brought within that provision a class of articles or wares which theretofore had been excluded from its operation, namely, those which were not susceptible of decoration. Clearly this alteration in the language of paragraph 97 in no way affected the interpretation put upon "articles" in the matter of the protest of Ramsperger & Co., *supra,* nor that accorded to "articles and wares" by the board and the Circuit Court of Appeals in the cases of Gabriel & Schall and United States *v.* Gabriel & Schall, *supra.* Had Congress intended to change the meaning given to "articles and wares" by the tribunals whose duty it was to interpret the paragraph, it could have done so very readily by substituting for the words "articles and wares" the word "manufactures." The insertion of the words "whether susceptible of decoration or not" in paragraph 95 of the tariff act of 1909 did not give a new meaning to "articles and wares" as used in the paragraph and accomplished no other purpose than that of making dutiable those articles and wares of earthy or mineral substances which, although having a definite shape and form, had theretofore been excluded by the board and the courts from the operation of the paragraph by reason of the fact that they were not susceptible of decoration.

To sum up, the expression "articles and wares" as used in paragraph 95 of the present tariff act was used in a similar connection in previous tariff laws where it received a judicial interpretation by the tribunals charged with ascertaining its meaning. In that interpretation the Government acquiesced, and no change having·been subsequently made in the law to meet it, we must assume that "articles and wares" as employed in paragraph 95 has the restricted signification put upon those words by the Board of General Appraisers and the courts, and that therefore the provision was not intended to include earthy or mineral substances in the mass, or manufactures of earthy or mineral substances which were not designed to receive and have not received a specific and definite form or shape for ultimate use. It is not earthy and mineral substances which are dutiable under paragraph 95, but creations evolved from earthy or mineral substances— creations which are something more than the material from which they are made and which are distinguished from the mass from which they were developed by a definite shape and form adapted to their final use. Salomon· v. United States (2 Ct. Cust. Appls., 92; T. D. 31635); United States v. Tamm & Co. (2 ibid., 425; T. D. 32173).

The goods here imported are modeling materials in the mass which are concededly made of substances of earthy and mineral origin. Inasmuch, however, as they have no specific or definite form or at best one given purely for a temporary purpose or for convenience in handling, they are not dutiable as assessed by the collector, but as nonenumerated manufactures under the provisions of paragraph 480.

The decision of the Board of General Appraisers is *affirmed.*