BARTLEY BROS. & HALL *et als. v.* UNITED STATES (No. 715).[1]

PLATE-POLISHING POWDER DUTIABLE, BY SIMILITUDE, AS WHITING.

Such merchandise as the impalpable powder of the importation is not to be classed as "articles and wares composed of mineral substances," but according to an established legislative construction is properly dutiable, by similitude, to whiting at the rate prescribed by paragraph 54, tariff act of 1909.—United States *v.* Tiffany (117 Fed. Rep., 367).

United States Court of Customs Appeals, November 14, 1912.

APPEAL from Board of United States General Appraisers, Abstract 25798 (T. D. 31675).

[Reversed.]

*Brown & Gerry* for appellants.

*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The merchandise is known as "Goddard's Plate Powder." The record is meager. A sample of the merchandise, with accompanying descriptive literature, properly identified as that covered by this importation and as imported into this country for many years, was received in evidence. The importation was in the form of an impalpable powder used, as its name implies, for polishing plate. It is put up in small boxes with sealed printed coverings, upon which is the following descriptive language:

Goddard's Non-mercurial Plate Powder.

For more than seventy years this powder has sustained an unrivaled reputation throughout the United Kingdom and Colonies as the best and safest for cleaning silver, electroplate, German silver, block-tin dish covers. * * *

The words "Goddard's Non-mercurial Plate Powder" are also registered as a trade mark.

In the accompanying literature it is further stated:

It is necessary to caution the public against *worthless* imitations, many of which on examination will be found to contain chalk or whiting, or some hard, gritty substance which scratches and wears away the surface, and consequently soon diminishes the value and durability of the plate.

---

[1] Reported in T. D. 32961 (23 Treas. Dec., 410).

It is thus made to appear beyond controversy and without contradiction that the use to which the importation is put is that for polishing plate of various kinds. In this particular its use is similar to, if not identical with, that of whiting.

The importation was assessed for dutiable purposes by the collector at the port of New York under the provisions of paragraph 95 of the tariff act of 1909 as "articles and wares composed wholly or in chief value of earthy or mineral substances."

Several claims are made by the protestants, among which are that it is dutiable as a "nonenumerated manufactured article" under the provisions of paragraph 480 of said act; and, alternatively, as 'whiting" under paragraph 54 of the act, either directly or by similitude. Other claims which we deem unimportant of recital were made.

That the merchandise is not dutiable as "articles and wares composed wholly or in chief value of earthy or mineral substances" under paragraph 95 of the act is settled by the decisions of this court in Salomon v. United States (2 Ct. Cust. Appls., 92; T. D. 31635) and United States v. Embossing Co. et als. (3 Ct. Cust. Appls., 220; T. D. 32536). This court in those cases held that the words "articles and wares" as contained in said paragraph did not include an impalpable powder. In the latter case this court approved the doctrine of a decision of the Board of General Appraisers in the case of Ramsperger & Co., G. A. 3280 (T. D. 16584). As the facts in this case and record are in material particulars alike and the court there reviewed the history of the legislation, we quote therefrom *in extenso*. We there said:

The Government contends that as plasticine and plastilina are made from earthy or mineral substances they fall strictly within the provisions of paragraph 97 and are therefore dutiable thereunder. The importers concede that the ingredients of both kinds of modeling materials are of earthy or mineral origin and that the mingling of them together constitutes a manufacturing process. The claim of the Government and the admission of the importers as to the composition of the importation really leaves but one question to be determined here, and that is, Are the goods "articles" or "wares" within the meaning of paragraph 95? As was well said by Judge Lacombe, speaking for the Circuit Court of Appeals in Dinglestedt v. United States (91 Fed. Rep., 112), "the phrase 'all articles composed of mineral substances' standing alone is one of great breadth, and would cover a great multitude of articles of the most diverse character."

In fact, considering that "article," in its largest sense, may be applied to almost every separate substance or material, and that the mineral kingdom divides honors with the animal and vegetable kingdoms, the phrase "all articles composed of * * * mineral substances" would, in widest acceptation, embrace about everything which was not animal or vegetable matter.

Manifestly, the reversal or affirmance of the decision of the board depends upon whether the paragraph shall receive the broadest construction which its language permits or a restricted meaning which will either exclude the mineral substances of which the modeling material is made or limit "articles and wares" to such things as

have received a specific, definite form for ultimate use. In the Dinglestedt case, just referred to, it was held that the phrase "all articles composed of * * * mineral substances" was not used in its broadest sense in paragraph 86 of the tariff act of 1894, and that it was limited to articles composed of mineral substances similar to those enumerated in Schedule B, if not to those mentioned in the subdivision of which the paragraph formed a part. Whether the interpretation there adopted still holds good, notwithstanding the modifications to which both schedule and subdivision have been subjected, we deem it unnecessary to decide, in view of the fact that we think the case may be disposed of on a judicial interpretation of the meaning of "articles and wares," which seems not to have been modified, but tacitly approved, by subsequent legislation.

The prototype of the paragraph here under consideration was paragraph 86 of the tariff act of 1894, which reads as follows:

86. All articles composed of earthen or mineral substances, including lava tips for burners, not specially provided for in this Act, if decorated in any manner, forty per centum ad valorem; if not decorated, thirty per centum ad valorem.

This paragraph was construed by the Board of General Appraisers in the matter of the protest of Ramsperger & Co. (T. D. 16584). In that case the board was called upon to determine the dutiable status of a metal polish which was a mechanical mixture of oxide of iron with vegetable or mineral grease, and this commodity, which was known as Putz Pomade, was assessed by the collector under the paragraph just referred to as an article composed of earthy or mineral substances. The board held that paragraph 86 was not intended by Congress to cover everything that was wholly or in chief value of mineral origin, and that a substance which had no definite form, such as metal polish, was not subject to its operation. Subsequent to this decision paragraph 86 of the tariff act of 1894 was recast and appeared in the tariff act of 1897 as paragraph 97, which reads as follows:

97. Articles and wares composed wholly or in chief value of earthy or mineral substances, or carbon, not specially provided for in this Act, if not decorated in any manner, thirty-five per centum ad valorem; if decorated, forty-five per centum ad valorem.

It will be noted that the new provision was broadened so as to include wares as well as articles composed wholly or in chief value of earthy or mineral substances. Nevertheless, the board, when it came to consider paragraph 97 in the case of Gabriel & Schall (T. D. 19628), adhered to the ruling made on the protest of Ramsperger & Co., *supra,* and declared, in July, 1898, that ground talc, which is certainly a mineral substance in the ordinary sense of the term, had not received a *specific form for definite and ultimate use,* and was therefore not dutiable under paragraph 97, but under section 6 as a manufacture not enumerated. In discussing the protest in Gabriel & Schall, the board said:

It would seem hardly reasonable to construe the paragraph (97) in its broadest sense. If we did, water would be dutiable under it, for water is an article composed wholly of a mineral substance. And it appears somewhat incongruous to classify an impalpable powder like ground talc as an article or ware not decorated in any manner.

The origin of the provision for articles composed of earthen or mineral substances dates back probably to a decision rendered by the board in 1891 (G. A. 949). The board held that certain earthen blocks made of a mixture of sand and chalk cemented together with linseed oil under pressure was not earthenware or any variety of ceramic ware. Such articles were clearly covered by paragraph 86 of the act of 1894 and paragraph 97 of the act of 1897.

The earthenware schedule contains five paragraphs, 94–98. Paragraphs 94, 95, and 96 provide for ceramic wares. Paragraph 98 provides for gas retorts, lava tips, electric carbons, and porous carbon pots. All of these articles are of specific form and are complete manufactures for definite and ultimate use; but ground talc is imported chiefly for making soap. It is in an advanced or partly manufactured condition, but it in no way resembles any of the articles named in the earthenware schedule. While this fact is not controlling, it is persuasive of congressional intent.

The decision of the board was affirmed by the Circuit Court of Appeals for the Second Circuit in United States v. Gabriel & Schall (suit A2793). The Government took no further proceedings and acquiesced in the conclusions reached by the board and the Circuit Court of Appeals.

Paragraph 95 of the tariff act of 1909, as may be seen by comparison, made no material change in the law as it stood in paragraph 97 of the tariff act of 1897 save and except that it brought within that provision a class of articles or wares which theretofore had been excluded from its operation, namely, those which were not susceptible of decoration. Clearly this alteration in the language of paragraph 97 in no way affected the interpretation put upon "articles" in the matter of the protest of Ramsperger & Co., *supra*, nor that accorded to "articles and wares" by the board and the Circuit Court of Appeals in the cases of Gabriel & Schall and United States v. Gabriel & Schall, *supra*. Had Congress intended to change the meaning given to "articles and wares" by the tribunals whose duty it was to interpret the paragraph, it could have done so very readily by substituting for the words "articles and wares" the word "manufactures." The insertion of the words "whether susceptible of decoration or not" in paragraph 95 of the tariff act of 1909 did not give a new meaning to "articles and wares" as used in the paragraph and accomplished no other purpose than that of making dutiable those articles and wares of earthy or mineral substances which, although having a definite shape and form, had theretofore been excluded by the board and the courts from the operation of the paragraph by reason of the fact that they were not susceptible of decoration.

To sum up, the expression "articles and wares" as used in paragraph 95 of the present tariff act was used in a similar connection in previous tariff laws, where it received a judicial interpretation by the tribunals charged with ascertaining its meaning. In that interpretation the Government acquiesced, and no change having been subsequently made in the law to meet it, we must assume that "articles and wares," as employed in paragraph 95, has the restricted signification put upon those words by the Board of General Appraisers and the courts, and that, therefore, the provision was not intended to include earthy or mineral substances in the mass, or manufactures of earthy or mineral substances which were not designed to receive and have not received a specific and definite form or shape for ultimate use. It is not earthy and mineral substances which are dutiable under paragraph 95, but creations evolved from earthy or mineral substances—creations which are something more than the material from which they are made and which are distinguished from the mass from which they were developed by a definite shape and form adapted to their final use. Salomon v. United States (2 Ct. Cust. Appls., 92; T. D. 31635); United States v. Tamm & Co. (2 *ibid.*, 425; T. D. 32173).

The collector's classification, therefore, was erroneous.

The Government contends, among other things, that inasmuch as the article is used as whiting that it is dutiable as a chemical compound or mixture under paragraph 3 of the act. In support of this contention there is cited in the Government brief numerous definitions and formulas of polishing powders, all of which show at least a mixture of various ingredients. There is, however, in this record no evidence disclosing the ingredients of which this importation is composed. The court can not say without evidence that because an article is used as whiting that it necessarily contains a number of ingredients rather than a single ingredient. While it may be true that whiting is usually composed of a number of ingredients, we can not foreclose ingenuity and invention by saying that all such must be thus composed. While

these definitions and formulas may well serve as a useful guide to the trade and the housewife, they can not be adopted as either evidence or as an infallible guide in judicial decision.

The fact that the merchandise is used exactly as is whiting and for the same purpose appears, as stated, uncontradicted in the record. Paragraph 54 of the act provides, *eo nomine*, for "whiting and Paris white." There is a similitude of use between this importation and whiting. It is the duty of the court to apply the similitude clause before resort can be had to the nonenumerative catchall provision of the tariff act. Kahn *v.* United States (100 Fed. Rep., 635, 637); Arthur *v.* Fox (108 U. S., 125).

The precise point here litigated was the subject of decision in United States *v.* Tiffany (117 Fed. Rep., 367), wherein the decision of the Board of General Appraisers was affirmed by the United States Circuit Court for the Southern District of New York. That case arose under the tariff act of 1894. An impalpable powder had been assessed by the collector of customs as "an article composed of earthy or mineral substances." The board, reversing the collector, held it to be dutiable as whiting, the *evidence in the case* showing that the article was whiting. The language of the provision for whiting in the acts of 1894, 1897, and 1909 was and is identical. The uses of the article in the Tiffany case were similar to the uses of this importation as established by the record. The trend of congressional legislation, therefore, as shown in United States *v.* Embossing Co., *supra*, has been to exclude such merchandise as this impalpable powder from the provision for "articles and wares composed of mineral substances" and to continue in full force and effect the *eo nomine* provision for "whiting," which carried with it that judicial consideration placed upon it by the courts, not changed but confirmed by legislative act. While there is no evidence in this record which establishes this importation to be descriptively or commercially whiting, the whole record conclusively establishes the use to be identical with that of whiting, to wit, for the polishing of plate, etc.

We are therefore of the opinion that the importation is properly dutiable by similitude to whiting at the rate of duty prescribed by paragraph 54 of the tariff act of 1909.

This claim is made in the protest, though not specifically in the assignments of error.

The appellant, however, having specified as error that the goods were not dutiable under paragraph 95 of the act, and that the board erred in sustaining the action of the collector which was erroneous, we must hold that the errors of law in the board holding the goods so dutiable and affirming the decision of the collector were duly assigned, and the judgment must for that reason be *reversed*.