(C. D. 258)

LUNHAM & REEVE, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 5, 1939)

*Walden & Webster (Jacob L. Klingaman* of counsel) for the plaintiff.
*Webster J. Oliver,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation of zinc in strips ¾ of 1 inch in width and 5/1000 of 1 inch in thickness, imported in coils approximately 125 meters in length. Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. The protest alleges "that said merchandise is dutiable at 2¢ or 2¼¢ per lb. under par. 394, or at the appropriate rate according to the component material of chief value, provided such rate is not greater than the rate assessed, or at 10% or 20% ad valorem under par. 1558" of said act. But the only claim urged in the brief of counsel for the plaintiff filed herein is "that the merchandise is properly dutiable as unenumerated articles at 20 per cent ad valorem under paragraph 1558."

A representative sample of the merchandise, consisting of a small piece of one of the imported strips, was admitted in evidence as Illustrative Exhibit 1, and a sample of the merchandise as manufactured, after importation, into zinc seam bindings for oilcloth or linoleum, was admitted in evidence as Illustrative Exhibit A.

In addition to the exhibits, the plaintiff offered in evidence the testimony of a single witness, James McKenna. No evidence was introduced by the Government.

The said witness testified that he was factory manager for H. L. Judd & Co., fabricators of metal products, at Hartford, Conn.; that he was familiar with the merchandise invoiced herein as "electrolytic ribbon zinc" and represented by Illustrative Exhibit 1; that in his factory this ribbon material is fed into an automatic machine which manufactures beams longitudinally; that the material has marks where nails are supposed to go; that it is cut off in lengths of approximately 4 yards, as represented by Illustrative Exhibit A; that, among other things, articles made out of material like Illustrative Exhibit 1 are stair plates and step nosings; that he had seen zinc in strips similar to Illustrative Exhibit 1 produced in rolling mills in this country; that zinc in the form of slabs is annealed, scraped, and drawn

until it reaches the condition of a ribbon or strip of the specific width and gauge ordered by the customer; that in this condition it is sold as raw material; that among other articles made from such strips are shoe eyelets, insulated ribbons that go under the window for radio connections, and for many other purposes.

Upon this record we find:

1. That the merchandise at bar consists of strips of zinc imported in coils.

2. That after importation it is treated and finished for use as material for binding linoleum, for making shoe eyelets, insulated ribbons for radio connections, and for many other purposes.

3. That in its imported condition it is not dedicated to any particular use.

While paragraph 394, which is the zinc paragraph of the Tariff Act of 1930, specifically provides for zinc in blocks, pigs, slabs, and sheets, there is no specific classification therein or elsewhere in said tariff act for zinc in strips. This omission is significant in view of the provisions of paragraph 316 (a) of said act where steel in strips, in coils or otherwise, is specifically mentioned. Evidently when Congress intends to provide for a metal in strip form that purpose is manifested by suitable language. And we are of the opinion that zinc strips imported in coils, as in the present case, is just as much a material as is steel in strips or as zinc in sheets, all such material being the result of a manufacturing process after that of smelting and rolling.

As above stated, the claim relied upon by counsel for plaintiff in their brief is the one alleging that the merchandise is dutiable at the rate of 20 per centum ad valorem under said paragraph 1558 as unenumerated manufactured articles. In support of their contention counsel cite three decisions of the appellate court which we will now discuss more or less in detail.

In *United States* v. *Wilkinson Process Rubber Sales Corp.*, 22 C. C. P. A. 60, T. D. 47051, the appellate court had before it certain rubber in rolls 50 feet long, 4 feet wide, and from $\frac{1}{24}$ to $\frac{3}{4}$ of an inch thick. It was assessed with duty at the rate of 25 per centum ad valorem under paragraph 1537 (b) of the Tariff Act of 1930 as a manufacture of india rubber. It was claimed, as in the instant case, to be properly dutiable at the rate of 20 per centum ad valorem under paragraph 1558 of said act as an unenumerated manufactured article. In affirming the decision of this court sustaining the claim of the importer the appellate court said:

This court on frequent occasions has been called upon to determine what constitutes the "manufacture of" an article. While the decisions may not seem entirely harmonious, in particulars which are of no concern here, this court has.

definitely adhered to a rule which, we think, is illustrated by the language used in *Ishimitsu* v. *United States*, 11 Ct. Cust. Appls. 186, T. D. 38963:

\* \* \* While this meaning has been enlarged, yet, there still remains the idea that to constitute a manufacture of a thing, or a thing manufactured, it must appear that something has been produced so changed or advanced in condition from what it was before being subjected to the processing or treatment that whether of only one material or of more than one, it has attained a distinctive name, character, or use, different from that originally possessed by the material or materials before being subjected to the manufacturing process.

\* \* \* \* \* \* \*

\* \* \* There is no question but what \* \* \* the imported rubber at bar has been manufactured beyond the crude stage. It is, therefore, a non-enumerated manufactured article. It is not a manufacture of rubber and dutiable within the provisions of paragraph 1537 for the reason that it is still only a material and has not been dedicated to any particular use.

In *Bache & Co.* v. *United States*, 11 Ct. Cust. Appls. 314, T. D. 39129, the same court held that certain pieces of polished plate glass, oval in shape with beveled edges, were not dutiable at the rate of 30 per centum ad valorem under the provision in paragraph 95 of the Tariff Act of 1913 for manufactures of glass, as classified by the collector. In reversing the decision of the lower court in favor of the Government the appellate court said:

We believe therefore that pieces of plate or window glass which otherwise respond to the descriptions contained in paragraphs 85, 88, and 90 are not advanced to the status of manufactures of glass because of being in a size and form available for immediate use, but that this result would follow only in case the glass forms should be exclusively appropriated to a given use as manufactured articles. \* \* \*

In *United States* v. *National Importing Co.* (*Inc.*) *et al.*, 12 Ct. Cust. Appls. 186, T. D. 40169, the involved merchandise consisted of pieces of amberoid resembling pipe bits and cigarette holders in shape, but not ready for use as such. Duty was levied thereon at the rate of 60 per centum ad valorem under paragraph 1454 of the Tariff Act of 1922 as smokers' articles. It was claimed that the merchandise was properly dutiable under the provision in paragraph 11 of said act as "amberoid, unmanufactured, not specially provided for". In affirming the decision of this court sustaining the claim of the plaintiffs, the appellate court said:

The authorities seem to be unanimous in their support of the proposition that in order to take the importation out of paragraph 11 as amberoid, unmanufactured, it must be found that they were manufactured to such extent that they were committed or dedicated to a use as smokers' articles alone, and that if they had not been so manufactured when imported, and were in such form that they could readily be used for other purposes and were so used, they should be classified as amberoid, unmanufactured.—*United States* v. *Lyon & Healy* (4 Ct. Cust. Appls. 438; T. D. 33873), *Wyman* v. *United States* (T. D. 28924), *Athenia Steel & Wire Co.* v. *United States* (1 Ct. Cust. Appls. 494; T. D. 31528), *Worthington* v. *Robbins* (139 U. S. 337).

It will be observed that in none of said cases was the provision in said paragraph 397 discussed. The first cited case involved the construction of paragraph 1537 of the Tariff Act of 1930, the rubber paragraph; the second, the construction of paragraph 95 of the Tariff Act of 1913, the glass paragraph. In both of said paragraphs the tariff acts in question contained the catch-all provision for manufactures of rubber not specially provided for, and manufactures of glass not specially provided for, whereas in paragraph 397 of the Tariff Act of 1930, the residuary paragraph of the metal schedule, there is no provision for manufactures of metal not specially provided for as such.

In the third cited case the court simply held that certain pieces of amberoid, resembling in shape pipe butts and cigarette holders but not ready for use as such, were properly dutiable under the provisions of paragraph 11 of the Tariff Act of 1922 as amberoid unmanufactured not specially provided for, rather than as smokers' articles under paragraph 1454 of the same act.

In our opinion none of the cited cases has any application to the instant merchandise.

It is evident that the provision in paragraph 397 of the Tariff Act of 1930 for "Articles or wares not specially provided for * * * if composed wholly or in chief value of * * * zinc * * * whether partly or wholly manufactured" is more specific than the provision of paragraph 1558 of said act for unenumerated manufactured articles, the word "articles" appearing in both paragraphs.

In the comparatively recent case of *D. C. Andrews & Co.* v. *United States*, 25 C. C. P. A. 437, T. D. 49507, in which the appellate court affirmed a decision of this court holding that a certain nickel catalyst used in the hydrogenation of vegetable oils, composed of nickel sulphids, nickel oxide, metallic nickel, palm oil, and kieselguhr, was properly dutiable at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as an article or ware composed in chief value of nickel. After excluding the said catalyst from other paragraphs of said act, the appellate court said:

We will next pass upon the question as to whether or not the imported catalyst is an article or ware composed in chief value of nickel, and not plated, within the meaning of paragraph 397.

Appellant in urging that the catalyst is not an "article" or "ware" relies upon a number of decisions, all of which need not be discussed here. *United States* v. *Embossing Co. et al.*, 3 Ct. Cust. Appls. 220, T. D. 32536; *Bartley Bros. & Hall et al.* v. *United States*, 3 Ct. Cust. Appls. 363, T. D. 32961; and *United States* v. *Geo. S. Bush & Co., Inc.*, 16 Ct. Cust. Appls. 478, T. D. 43222, seem to be as near in point as any of the cases relied upon and will be briefly referred to.

Then, after discussing the three cases mentioned and holding them to be inapplicable to the merchandise there involved, the court said:

It is unnecessary for us here to discuss at great length the various shades of meaning which might be attached to the words "articles" and "wares" as used in the different provisions of the Tariff Act of 1930 and in practically every tariff law enacted in the United States. It is obvious that the term "article" is broad enough in the nonenumerated paragraph to include any nonenumerated substance. Possibily, in other paragraphs the term "article" necessarily would be given a narrower meaning depending upon the context, scope, and purpose of the whole provision. The instant merchandise is in chief value of nickel. Nickel is one of the well-known and valuable base metals. The same paragraph contains reference to the precious metals as well as base metals, other than nickel. In other words, it is a paragraph covering metal articles or wares placed in the tariff schedule of "Metals and Manufactures of" metals and we see no reason why the material at bar, being essentially a nickel article, should not find classification therein unless it is excluded by virtue of the so-called doctrine of susceptibility which we next propose to discuss.

After discussing certain previous decisions wherein it was held that in order to be classifiable under said paragraph 397 articles need not necessarily be susceptible of being plated with gold, silver, platinum, etc., the court said:

We do not believe that the framers of the catch-all metal paragraph, 397, here involved, contemplated a construction of the same which would deny classification therein of such a metallic article as is here involved. This conclusion is somewhat confirmed by a consideration of the fact that when the 1930 tariff act was being prepared, Congress had before it the Summary of Tariff Information, 1929, which, in Vol. 1 at page 908, in referring to articles that were included in the predecessor paragraph 399, Tariff Act of 1922 (which was identical, except as to rates of duty, with paragraph 397 at bar), included the following pertinent language:

\* \* \* Others are products made from the various non-ferrous metals and alloys, such as aluminum, copper, brass, bronze, lead, nickel, zinc, pewter, tin, and *other metals, compositions, and manufactures not elsewhere provided for.* \* \* \* [Italics ours.]

Further along in the article discussing the said predecessor paragraph, under the heading of "DECISIONS," attention was called to the fact that in Abstract (N) 3558, silver powder was held to be dutiable thereunder.

In *United States* v. *Didier-March Co.*, 2 Ct. Cust. Appls. 436, T. D. 32198, the appellate court passed upon the relative specificity of paragraph 193 of the Tariff Act of 1897 which corresponded to paragraph 397 of the Tariff Act of 1930 and section 6 of said 1897 act which corresponded to the present paragraph 1558. The involved merchandise was composed in chief value of stoneware but in part of metal. Inasmuch as the court excluded it from the stoneware provision, the question arose as to whether it was dutiable under the catch-all paragraph of the metal schedule, or as a manufactured article not enumerated under section 6 of said 1897 act. The court concluded that the language of paragraph 193 (the metal catch-all paragraph) was more specific than that contained in said section 6.

The claim in the present case calls for unenumerated manufactured *articles*, whereas the involved merchandise was classified under

a provision for *articles* composed in chief value of zinc. The latter is certainly the more specific for the merchandise, and we so hold. The decision of the collector is therefore affirmed and all claims of the plaintiff are overruled. Judgment will be rendered accordingly.