(C. D. 783)

M. S. COWEN & CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 23, 1943)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard H. Welsh* and *Frank X. O'Donnell, Jr.*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit against the United States in which the plaintiff seeks to recover all or a part of the duty assessed on certain peanuts coming into the United States from the Philippine Islands. Duty was assessed at 7 cents per pound under the provision for shelled peanuts in paragraph 759 of the Tariff Act of 1930, and the plaintiff claims that the commodity is free of duty under section 301 of said act, or that the portion of the shipment which was of Philippine origin is free of duty under that section and sec-

tion 508. The pertinent parts of the tariff provisions raised by the protest read as follows:

PAR. 759. Peanuts, * * * shelled, 7 cents per pound; * * *.

SEC. 301. PHILIPPINE ISLANDS.

There shall be levied, collected, and paid upon all articles coming into the United States from the Philippine Islands the rates of duty which are required to be levied, collected, and paid upon like articles imported from foreign countries: *Provided,* That all articles, the growth or product of or manufactured in the Philippine Islands from materials the growth or product of the Philippine Islands or of the United States, or of both, or which do not contain foreign materials to the value of more than 20 per centum of their total value, upon which no drawback of customs duties has been allowed therein, coming into the United States from the Philippine Islands shall hereafter be admitted free of duty: * * * *And provided further,* That the free admission, herein provided, of such articles, the growth, product, or manufacture of the United States, into the Philippine Islands, or of the growth, product, or manufacture, as hereinbefore defined, of the Philippine Islands into the United States, shall be conditioned upon the direct shipment thereof under a through bill of lading, from the country of origin to the country of destination: * * *.

SEC. 508. COMMINGLING OF GOODS.

Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers, the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof, unless the importer or consignee shall segregate such merchandise at his own risk and expense under customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained.

At the opening of the trial in Los Angeles, the plaintiff offered a bill of lading showing a through shipment of the merchandise from Manila, P. I., to Los Angeles, and that the bill of lading was filed in the customhouse on April 20, 1939. This document was received in evidence and marked "Exhibit 1."

The plaintiff introduced also a certificate of origin filed with the collector on April 18, 1939. Counsel for the defendant acknowledged that the document was filed on that date, but he stated that he did not "concede the statements contained in front of that as being true, because that is the issue that is in this case." Counsel for the plaintiff answered, "That is perfectly all right" and the certificate was admitted in evidence and marked "Exhibit 2."

The plaintiff then called Mr. William E. Kelly, who is a United States customs examiner at the port of San Pedro. He testified that the initials in red ink on the summary sheet are those of Mr. William Meikle, who is an inspector and acting examiner working under the supervision of the witness, that the examiner's return on the invoice is "shelled peanuts, product of the Philippine Islands," and on cross-examination stated that the examiner's return was approved by the appraiser.

The defendant called Mr. John C. Townsend, who is the deputy collector in charge of the liquidating division at Los Angeles. He testified that he did not liquidate the entry but the record showed that the advisory classification by the appraiser was not followed and the merchandise was classified as shelled peanuts and duty was assessed at 7 cents per pound under paragraph 759 in accordance with the provisions of section 508 on commingled merchandise; that the collector derived his information as to what the merchandise consisted of from the certificate of origin, exhibit 2, and some other reasons. When asked if he knew what the other reasons were, he stated, "No, except for the record."

The case was then transferred to San Francisco where the plaintiff called Mr. Mervyn Cowen, president of M. S. Cowen & Co., the party in interest. He testified that his firm purchased the shipment of peanuts herein involved from International Oil Factory in the Philippine Islands and he received several 3-pound packages and 5-pound packages of the peanuts which were forwarded by an official weigher and sampler in Los Angeles who drew samples and sent them to his firm; that he showed the samples to Arthur Rudde, a peanut broker.

The next witness called by the plaintiff was Mr. Arthur Rudde who testified that he had been in the peanut brokerage business since 1918; that he handles approximately 85 to 90 per centum of all the peanuts that come into northern California and had bought and sold all types and grades, as Java, Philippine, Chinese, Japanese, Indian, Virginia, Georgia, and Texas peanuts; that certain samples, which were sent by Mr. Koppel of Los Angeles, were submitted to him by Mr. Cowen and, upon examination, he found that they were a mixture of Philippine and Java peanuts; that those from Java have different characteristics from the Philippine product in their shape, size, color, and skin and are easily distinguished; that he segregated them in Mr. Cowen's office and found that the Java peanuts constituted 13 to 15 per centum of mixture.

On cross-examination, the witness testified that Java peanuts are blunt and dark brown in color while those grown in the Philippines are round and have different colors depending upon how old they are; that Java peanuts have more oil than the Philippine product.

The plaintiff introduced also, as exhibit 3, a deposition of Jose Lim taken before a notary public in the Philippine Islands. The witness testified that he is an assistant to the general manager of International Oil Co. of Manila and is familiar with the shipment herein involved; that he purchased all of the peanuts and was the person who signed the certificate of origin, exhibit 2; that he knows the proportions of the mixture in that shipment because he gave the orders for mixing operations and they were mixed under his supervision; that both the Philippine and the Java peanuts, all of which were shelled when pur-

chased, were placed in large sieves and were picked and graded by women to remove the foreign matters such as dirt, stone, etc.; that the duty was paid on the Java peanuts when they were imported from Java but no drawback was received when they were shipped to the United States; that the value of the Philippine peanuts purchased in Manila was 11.50 pesos per picul and the value of those from Java was 10.30 pesos per picul; that the cost of grading and picking both kinds was 0.60 pesos per hundred pounds; that the shipment herein involved consisted of 85 per centum of Philippine and 15 per centum of Java peanuts.

The case was then transferred to Los Angeles where Mr. L. Koppel was called as a witness for the plaintiff. He testified that he is co-partner in the firm of Koppel Bros. which, for 18 years, has been engaged as weighers and surveyors; that his firm weighed the shipment of peanuts having marks "M. S. C.—X. L. Brand, San Francisco" (which are the marks of the packages noted on the invoice in this case) and drew samples therefrom, which were sent to M. S. Cowen & Co. of San Francisco. He produced a copy of the invoice covering charges for the weighing and sampling, a work sheet and report on the weights, which were admitted in evidence and marked "Exhibit 4." The witness testified further that the samples were taken by the probing method from 10 or 15 bags and were placed in a container, wrapped and mailed. On cross-examination the witness testified that the samples contained 2 or 3 pounds of peanuts.

The defendant argues in its brief that mixed peanuts are not "articles" and therefore are not entitled to classification under section 301, *supra*, because that section is limited to "articles." We do not agree with that contention. In the case of *Junge* v. *Hedden*, 146 U. S. 233, the court determined the scope of the provision for "articles" as follows at page 238:

In common usage, "article" is applied to almost every separate substance or material, whether as a member of a class, or as a particular substance or commodity.

That definition was quoted with approval in *Lussky, White & Coolidge, Inc.* v. *United States*, 21 C. C. P. A. (Customs) 201, T. D. 46727. In *Rhodes* v. *United States*, 2 Ct. Cust. Appls. 100, T. D. 31637, sponges, the product of the Philippine Islands, were held to be free of duty under section 5 of the Tariff Act of 1909, which contains a provision similar to that in section 301 of the Tariff Act of 1930, herein involved. The issue in that case was whether or not there was a direct shipment of the merchandise from the Philippine Islands to the United States.

The defendant cites *Salomon* v. *United States*, 2. Ct. Cust. Appls. 92, T. D. 31635, and *Bartley Bros. & Hall et al.* v. *United States*, 3 Ct. Cust. Appls. 363, T. D. 32961. In those cases substances in the form of powder were held not to be within the provision for "articles and wares composed wholly or in chief value of earthy or mineral substances."

The court held merely that the term "articles and wares" in that phrase should not be construed in the broadest sense. The defendant cites also *United States* v. *Ceasar Co. et al.*, 3 Ct. Cust. Appls. 214, T. D. 32533. In our opinion that decision has no bearing on the meaning of the provision for "articles." It relates to the question whether silk fabrics in the piece were "silk fabrics" or "articles made from chiffon." The court held that they were silk fabrics rather than articles made from chiffon.

We hold that the commodities herein involved are "articles" within the meaning of that term in section 301, *supra*.

The next question for decision is whether the shipment comes within the first proviso in section 301, *supra*. The statute clearly grants free entry to all articles coming into the United States from the Philippine Islands which contain foreign products but which do not contain foreign materials to the value of more than 20 per centum of the total value of the shipment, and upon which no drawback of customs duties has been allowed therein.

The record shows that the commodity in this case contains 15 per centum of Java peanuts, valued at slightly less per picul than the Philippine product in the shipment, and that no drawback was paid on the Java product upon the exportation thereof. Thus the shipment is far within the statutory requirement of products coming into the United States from the Philippine Islands containing no more than 20 per centum in value of foreign materials.

We hold that the merchandise herein involved is free of duty under the first proviso of section 301, *supra*. That claim in the protest is therefore sustained. Judgment will be entered in favor of the plaintiff.