(C. D. 1063)

BURGESS BATTERY CO. v. UNITED STATES

United States Customs Court, Second Division

(Decided August 15, 1947)

*Sidley, Austin, Burgess & Harper* (*Howard P. Robinson* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Howard L. Harawitz,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and LAWRENCE, Judges; TILSON, J., concurring

LAWRENCE, Judge: The Burgess Battery Co., a Delaware corporation, which operates a plant at Niagara Falls, Ontario, Canada, shipped to its United States plant at Freeport, Ill., coiled zinc measuring 7⅝ inches wide, 0.070 of 1 inch thick, and approximately 40 feet long. It was imported in coil form merely to effect economy in transportation.

The question submitted for our determination is whether the imported merchandise is "zinc in sheets" within the meaning of the tariff act. Duty was levied thereon at the rate of 45 per centum ad valorem under the provision in paragraph 397 of the Tariff Act of 1930 for—

Articles or wares not specially provided for, * * * if composed wholly or in chief value of * * * zinc * * *.

It is the contention of the plaintiff that the merchandise is properly classifiable as zinc in sheets and as such dutiable at the rate of 1 cent per pound under paragraph 394 of said act, as modified by the Trade Agreement between the United States and Mexico, effective January 30, 1943, 78 Treas. Dec. 190, T. D. 50797.

At the hearing held in Detroit, the above two protests were consolidated and the testimony of three witnesses for the plaintiff was submitted. Plaintiff endeavored to establish a commercial designation for the imported merchandise as zinc in sheets, but we seriously question whether it accomplished that result. Each of the three witnesses agreed that the importations were known as both sheet zinc and strip zinc, but that fact falls far short of establishing either of those terms as the one properly applicable to the merchandise in a tariff sense. A careful study of the testimony of record affords us little assistance in determining whether the imported merchandise is, in fact, zinc in sheets or zinc in strips. Indeed, the issue is not clarified by the statements of the witnesses that there is no clear distinction in the zinc industry between the terms "strips" and "sheets."

On this point, Frederick J. Kirkman, general manager of plaintiff company, the first witness, testified—

X Q. Do you know whether any definite distinction is made in the industry between sheets and strips? Do you know that of your own knowledge?—A. Do I know it of my own knowledge?

X Q. Of your own knowledge whether there is any distinction in the industry between sheets and strips?—A. I can't say that I know that there is a distinction between them. I don't have a distinction between them.

X Q. You don't have a distinction between them?—A. So far as I am concerned, they are both rolled zinc.

*        *        *        *        *        *        *

R. Q. Do you know of any distinction between the words "strip" and "sheet" as used in the zinc trade?

*        *        *        *        *        *        *

A. No, I don't. In the sense that we used them in these importations, in these commercial papers, it was the same.

The second witness, Herman D. Carus, vice president of the Matthiesen & Hegler Zinc Co., whose business consists of smelting zinc concentrates and rolling slab zinc into sheets, rods, wire, and other

similar articles, after stating that his company sold its products to plaintiff company, among others, testified—

Q. Now, the Government has offered in evidence here Defendant's Exhibit 3 wherein the merchandise here in question is referred to as "rough rolled strip zinc." I will ask you whether or not in the trade usage is there any distinction in the use of the word "strip" as distinguished from the word "sheet"?—A. No, sir.

and on cross-examination stated:

X Q. Is it your testimony that there is no distinction so far as zinc is concerned between "strips" and "sheets"?—A. No, sir. A strip of zinc is a sheet of zinc.

\* \* \* \* \* \* \*

X Q. So far as you know is there any definite distinction in the zinc industry between sheets and strips?—A. Zinc in sheets?

X Q. Zinc in sheets and zinc in strips?—

\* \* \* \* \* \* \*

A. A strip is a narrow sheet.

The third witness, William H. Finkeldey, consulting engineer, with thirty years' experience, and familiar with the terms used in the zinc trade, testified—

X Q. At what stage would you say it becomes a strip?—A. I usually classify— Well, there is no exact line.

X Q. Go ahead.—A. There is no definite line of demarcation—

X Q. Go ahead.—That is what I am trying to find out. —A.—between strip and sheet that has been established over long years of trade usage.

X Q. So that in the zinc industry there is no trade custom or usage which establishes a distinction between a sheet and a strip, is that correct?—A. Not definitely.

X Q. Not definitely?—A. No; it depends considerably on the thickness of the metal—at least it does to me.

X Q. But there is no definite line of demarcation according to trade custom or usage where you would call one thing a sheet and the other thing a strip?— A. Oh, yes, there is in certain instances.

X Q. In certain instances?—A. Yes.

X Q. But there isn't a general, definite, uniform set of standards, is there, in all instances?—A. No; not in all instances—not that covers all cases.

At best the most that can be said of the proof offered is that all three witnesses considered the imported merchandise to be zinc *sheets or strips*. This testimony harmonizes with the allegation made in the protest that—

\* \* \* The commercial name of the material involved is "zinc sheet or strip in rolls or coils" and is listed as such in such publications as Thomas Directory, Metal Market and Journal of Commerce. \* \* \*

Obviously if both terms apply to the commodity in question, it cannot properly be said that it is uniformly, definitely, and generally known in the trade and commerce as "zinc in sheets," and such certainty is required as the principle of commercial designation is

defined by our appellate court in *United States* v. *Wilfred Schade & Co.*, 16 Ct. Cust. Appls. 366, T. D. 43092. In that case the court had before it the proper classification of an importation of "cod-liver oil-cake meal," as a nonenumerated manufactured article under paragraph 1459 of the Tariff Act of 1922, and claimed by the importer to be free of duty as "fish for purposes other than human consumption," or "oil-cake meal," or "cod," under paragraphs 1575, 1629, and 1630, respectively, of said act. In sustaining the classification by the collector, the court said:

It is obvious that there is no evidence in this record tending to prove that the commercial understanding of the term "oil cake" is different from its common meaning. Nor is there any evidence to the effect that, in the trade and commerce of the United States, the term "oil-cake meal" includes the merchandise in question. The only evidence offered in support of such contention is that the merchandise in question is bought and sold as "cod-liver oil-cake meal." This does not conform to the character of proof required. Without intending to give a comprehensive definition of the rule, it may be said, however, that, if an article is not within the common meaning of a tariff term, in order to bring it within that term by proof of commercial designation, where such proof is limited, as it is here, to the trade term by which the article is bought and sold, it must be shown by a preponderance of the evidence that it was bought and sold or known in the trade and commerce of the United States, uniformly, definitely, and generally by the term contained in the statute. *United States* v. *Walter*, 4 Ct. Cust. Appls. 95, T. D. 33371; *Seligmann* v. *United States*, 6 Ct. Cust. Appls. 85, T. D. 35336; *Hampton, Jr. & Co.* v. *United States*, 12 Ct. Cust. Appls. 490, 496, T. D. 40695.

In the case before us, the unconvincing nature of the proof submitted fails to establish that the merchandise in question was "bought and sold or known in the trade and commerce of the United States, uniformly, definitely, and generally" by the term "zinc in sheets" as contained in the statute. Therefore, we must rely on the common meaning of the term and upon decisions of the courts distinguishing "sheets" from "strips" of any given metal.

It is axiomatic in customs law that tariff acts are construed in the language of commerce, which, in turn, is presumed to have the same meaning as commonly and ordinarily understood. *Bakelite Corporation et al.* v. *United States*, 16 Ct. Cust. Appls. 378, T. D. 43117; *Ringk & Co.* v. *United States*, 10 Ct. Cust. Appls. 107, T. D. 38372; *Meyer & Lange et al.* v. *United States*, 6 Ct. Cust. Appls. 181, T. D. 35436; *Acker* v. *United States*, 1 Ct. Cust. Appls. 328, T. D. 31431; *United States* v. *Nordlinger*, 121 Fed. 690. Perhaps the latest pronouncement and reiteration of that rule is contained in *United States* v. *Fung Chong Co.*, 34 C. C. P. A. (Customs) 40, C. A. D. 342, decided by the Court of Customs and Patent Appeals on July 9, 1946, wherein O'Connell, J., speaking for the court, said:

The trial court properly ruled that in customs cases the common and commercial meaning of a word used in the tariff act "are presumed to be the same unless it is otherwise shown; * * *."

The terms "sheet" and "strip" are commonly defined as follows:
Webster's New International Dictionary, Second Edition, (1943):

*sheet:*

10. A broad, thinly expanded portion of metal or other substance;    *    *    *

*strip:*

1. A narrow or relatively long piece;    *    *    *

*    *    *    *    *    *    *

10. A rolled piece of metal, esp. iron or steel, of the thickness of sheet metal but relatively long and narrow.

Funk & Wagnalls New Standard Dictionary of the English Language (1942 Ed.):

*sheet:*

1. A very thin and broad piece of any substance;    *    *    *
2. A broad, flat surface;    *    *    *

*strip:*

1. A narrow piece comparatively long;    *    *    *

The Century Dictionary (1891 Ed.):

*sheet:*

2. In general, a broad, usually flat, and relatively thin piece of anything, either very flexible, as linen, paper, etc., or less flexible, or rigid, as lead, tin, iron, glass, etc.    *    *    *

*strip:*

1. A narrow piece, comparatively long    *    *    *.

The Oxford Dictionary (1914 Ed.):

*sheet:*

9. A relatively thin piece of considerable breadth of a malleable, ductile, or pliable substance.    *    *    *

*strip:*

1. *         *         *         *         *         *         *

d. A narrow piece of board, metal plate, etc.    *    *    *

From the foregoing definitions, it is at once apparent that zinc of the kind and form involved herein, 7⅝ inches wide, 70/1000 of 1 inch thick, and approximately 40 feet long, would be included within the meaning of the word "strip," and for the same reason excluded from the term "sheet."

Moreover, what constitutes a strip as distinguished from a sheet has been the subject of considerable litigation in this and our appellate court.

In *Universal Shipping Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 245, T. D. 33479, the court had before it the construction of a tariff provision for "Aluminum    *    *    *    in    *    *    *    sheets." In excluding from that provision the merchandise there before it, the court cited the following definitions of the word "sheet": "a broad, usually flat, and relatively thin piece of anything,"—Century Dictionary; "a very thin and broad piece of any substance,"—Standard Diction-

ary; and "in general, any broad, uninterrupted expanse; a broad, thinly expanded portion of metal or other substance,"—Webster's Dictionary.

In *Lunham & Reeve, Inc.* v. *United States*, 3 Cust. Ct. 293, C. D. 258, the merchandise under consideration consisted of zinc strips in coils ¾ of 1 inch in width, 125 meters in length, and 8/1000 of 1 inch in thickness. There, as here, the merchandise was classified by the collector under paragraph 397, *supra*, and the plaintiff claimed the importation classifiable under paragraph 394 as zinc in sheets. The plaintiff, however, abandoned that contention and relied upon an alternative claim alleged under paragraph 1558 of said act. In the course of our opinion, we made the following observation:

While paragraph 394, which is the zinc paragraph of the Tariff Act of 1930, specifically provides for zinc in blocks, pigs, slabs, and sheets, there is no specific classification therein or elsewhere in said tariff act for zinc in strips. This omission is significant in view of the provisions of paragraph 316 (a) of said act where steel in strips, in coils or otherwise, is specifically mentioned. Evidently when Congress intends to provide for a metal in strip form that purpose is manifested by suitable language. * * *

The classification of the collector under paragraph 397, *supra*, was sustained, and that conclusion was affirmed on appeal in *Lunham & Reeve, Inc.* v. *United States*, 28 C. C. P. A. (Customs) 268, C. A. D. 153.

In *Seligmann et al.* v. *United States*, 6 Ct. Cust. Appls. 85, T. D. 35336, the court had under consideration aluminum in coils measuring from 2 to 7 inches in width and of varying lengths. The commodity was classified by the collector under paragraph 199 of the Tariff Act of 1909 as articles or wares not specially provided for, composed wholly or in part of aluminum. The claim was made by the importer that the importation was properly classifiable under paragraph 172 of that act as aluminum in sheets. The court, in affirming the classification of the merchandise under paragraph 199, *supra*, cited its previous case of *Universal Shipping Co.* v. *United States*, *supra*, and quoted with approval this extract therefrom:

The term "sheets" is ordinarily applied to a broad general surface, and in the connection in which it is used in paragraph 172 may fairly be said to mean the sheet of the metal made in that form as one of the developments in the process of manufacture, and not intended to include the articles made from such sheets.

It also held that—

* * * Proof that the merchandise is commercially known as "sheet aluminum" is not proof that it is known as "aluminum in sheets," which would be necessary.

Further, the court observed that—

* * * It is, too, somewhat difficult to believe that aluminum in coils is commercially known as aluminum in sheets, while conceivably it might be known as sheet aluminum.

In *United States* v. *Ashcroft Manufacturing Co.*, 176 Fed. 736, the court had before it articles of glass measuring about 5¼ inches long, 1½ inches wide, and ⅝ of 1 inch thick, which it described as a "strip" of glass in that it consisted of "a narrow piece comparatively long," citing the Standard Dictionary, and therefore responded to the tariff provision in paragraph 110 of the Tariff Act of 1897 for "strips of glass."

Similarly in *Strouse, Adler & Co.* v. *United States*, 3 Ct. Cust. Appls. 184, T. D. 32466, the court affirmed the collector's classification of imported steel 3 inches in width, from 0.022 to 0.027 of 1 inch in thickness, and 60 feet in length, as "steel in strips" under paragraph 135 of the Tariff Act of 1909.

In *Joshua Oldham & Son et al.* v. *United States*, 19 Treas. Dec. 1024, T. D. 30989 (G. A. 7108), the court had before it the relative specificity of a provision for bands and strips of steel as against sheets and plates of steel. In the opinion therein, the merchandise was described as "bands or strips" of steel for making band saws, and was invoiced as "band-saw plates." We there said:

In tariff terms, sheets and plates and bands and strips are clearly contradistinguished, especially in metals. The tariff act of 1897 provided (paragraph 128) a rate of 3 cents per pound plus 20 per cent ad valorem on "steel bands or strips, untempered, suitable for making band saws," and "if tempered, or tempered and polished," a rate of 6 cents per pound plus 20 per cent ad valorem. * * *

* * * The question as now framed is whether the provision for "bands and strips of steel, exceeding 12 feet in length" is any the less applicable to the merchandise than the old one, which was qualified by the phrase "suitable for making band saws." In our opinion, the new provision merely extends its scope so as to cover goods not within the terms of the old one, and does not exclude such as were. At all events the provision in paragraph 124, to our mind, supplies a more specific enumeration for the goods than that of "sheets and plates" of steel (paragraph 131).

and added—

Long lengths of narrow steel in Magone *v.* Vom Cleff (70 Fed. Rep., 980) were held to be "strips" of steel rather than sheets. It will also be noted that all definitions of the word "sheet" infer relative breadth as well as thinness and length. That an article 6 inches wide, 40 to 50 feet long, and thinner than number 10 wire gauge is entitled to be considered a sheet or a plate in preference to the term band or strip seems to us to be a matter of grave doubt. In Boker *v.* United States (154 Fed. Rep., 174; T. D. 28005), the court said:

. An article 200 feet long, 6 inches wide, and very thin may be of steel; but it is not a "sheet" of steel, and such word is absurd as applied thereto.

That case was affirmed in 158 Fed. Rep., 396 (T. D. 28548). It applies as well to the goods we have here before us. The bands for saws are certainly not sheets. * * *

The plaintiff in its briefs attaches considerable importance to the word "strip" in the following excerpt from *Langerman & Petty* v. *United States*, 75 Fed. 1 (C. C. S. D. N. Y. 1896), —

The articles in question are commercially known as "lithographic zinc sheets." The collector classified them for duty, under paragraph 215 of the act of October 1, 1890, as manufactures not specially provided for, composed of zinc, and whether partly or wholly manufactured. The importers protested, claiming that the articles were dutiable under paragraph 213, as "zinc in sheets." The evidence shows that these articles are coated on one side with a preparation. *"They are the ordinary zinc sheets, just as they come from the rolling mill,* but the coating is for the special purpose of lithographers." They vary in size from 10 x 14 inches to 34 x 48 inches. I think the importers are right in their contention. Even if the coating for a special purpose has advanced the articles so that they may be adapted to a different purpose, they still remain zinc in sheets. *There is no evidence that they are not sold by weight, or that they are commercially known by any name other than lithographic zinc sheets. I think such large flat strips of zinc in the form in which they come from the rolling mill are zinc in sheets,* and specially provided for under paragraph 213 of said act. The decision of the board of general appraisers is therefore reversed. [Italics added.]

A mere reading of that excerpt will show that the court had no idea of dignifying the word "strip" as being a competitive term in the issue before it. The holding was that they were ordinary zinc sheets just as they came from the rolling mill and the fact that they varied in size from 10 by 14 to 34 by 48 inches manifests clearly that the word "sheets" is very accurately descriptive of the merchandise.

From a cursory examination of the Metal Schedule of the Tariff Act of 1930 it becomes at once significant that Congress was very particular in describing certain forms of steel, aluminum, zinc, and similar base metals. For example, paragraph 309 provides for steel sheets, plates, bars, and rods, but makes no specific provision for strips. The same is true of paragraph 310 which covers sheets or plates of iron or steel, coated with tin or lead. However, in the statutory provisions set forth below we have emphasized the word "strips" wherever Congress saw fit to enumerate that item. For instance, in the proviso to paragraph 313, there is a specific provision for—

* * * bands and *strips* of iron or steel, whether in long or short lengths, not specially provided for, * * *.

and in paragraph 315, we find a provision reading—

* * * and on all *strips*, plates, or sheets of iron or steel of whatever shape, other than polished, planished, or glanced sheet iron or sheet steel, * * * there shall be paid two-tenths of 1 cent per pound in addition to the rates provided on plates, *strips*, or sheets of iron or steel of common or black finish of corresponding thickness or value.

In paragraph 316 appears the following—

* * * all flat wires and all steel in *strips* not thicker than one-quarter of one inch and not exceeding sixteen inches in width, whether in long or short lengths, in coils or otherwise, and whether rolled or drawn through dies or rolls * * *.

In paragraph 374, provision is made for—

Aluminum * * * in coils, plates, sheets, bars, rods, circles, disks, blanks, *strips*, rectangles, and squares * * *.

Paragraph 381 enumerates—

Copper in * * * sheets, * * * brass rods, sheet brass, brass plates, bars, and *strips*, Muntz or yellow metal sheets * * * bronze rods and sheets * * *.

And similarly, paragraph 389 provides for—

Nickel * * * in bars, rods, plates, sheets, *strips*, strands * * *.

From the above, it will be noted that in the preparation of the Metal Schedule, Congress was definite and certain in the use of words. Where it was intended that strips of the named metals were to be included within the purview of a particular paragraph, *eo nomine* provision was made therefor. Paragraph 394, with which we are here concerned, is likewise couched in detailed and unambiguous terms but it does not enumerate "strips." It is, therefore, fair to conclude that since paragraph 394 contains no provision for zinc in strip form, it was not the intention of Congress that merchandise such as that in issue should come within the scope of said paragraph.

Inasmuch as the record herein fails to establish that the merchandise before us is known either commercially or commonly as zinc in sheets, as distinguished from zinc in strips, we follow the decisions of our appellate court in *Universal Shipping Co. et al.* v. *United States, supra; Lunham & Reeve, Inc.* v. *United States, supra;* and *Seligmann et al.* v. *United States, supra,* and hold that the claims in the protests alleging the merchandise to be classifiable under paragraph 394, *supra,* as zinc in sheets must be and the same are hereby overruled, and the decision of the collector is affirmed.

In view of the conclusion we have reached, we find it unnecessary to pass upon the motion of counsel for the defendant to dismiss the protests on the ground that plaintiff failed to make out a *prima facie* case.

Judgment will be entered accordingly.

### CONCURRING OPINION

TILSON, Judge: The merchandise in this case is nothing more than mere material, and it is my view that the Congress never intended to include mere material within the provision for "Articles or wares * * *," found in paragraph 397 of the Tariff Act of 1930. However, under the decision of our appellate court in *Lunham & Reeve, Inc.* v. *United States,* 28 C. C. P. A. 268, no other course appears to be left open to us except to hold the instant merchandise, mere material, dutiable as "Articles or wares * * *." I, therefore, reluctantly join in the conclusion reached by my associates in this case, solely because of the *Lunham* case, *supra.*