No. 68544.—Geo. S. Bush & Co., Inc., and Heidner & Co. v. United States, protests 60/23985 and 61/2464 (Portland, Oreg.).

RAO, Judge: The two protests here involved, which have been consolidated for purposes of trial, relate to importations of cold-rolled steel strips of stated specifications, which were assessed with duty at the rate of 10½ per centum ad valorem, within the provisions of paragraph 313 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, for—

Bands and strips of iron or steel, whether in long or short lengths, not specially provided for.

It is the contention of the plaintiffs that said merchandise is more specifically provided for in paragraph 316(a) of said act, as modified by said sixth protocol, at the rate of 6 per centum ad valorem, or at the rate of 8½ per centum ad valorem, depending upon thickness, as—

* * * all steel in strips not thicker than ¼ inch and not exceeding 16 inches in width, whether in long or short lengths, in coils or otherwise, and whether rolled or drawn through dies or rolls, or otherwise produced.

Plaintiffs alternatively claim that said merchandise is dutiable at the rate of ⅒ cent per pound, in paragraph 314 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as—

* * * hoop or band steel, cut to lengths, or wholly or partly manufactured into hoops or ties, coated or not coated with paint or any other preparation, with or without buckles or fastenings, for baling cotton or any other commodity.

At the trial of this case, a sample of the merchandise, taken from one of the shipments at bar, and stated to be representative of all of the steel strips here involved, except as to width, was received in evidence as plaintiffs' exhibit 1; and counsel for the respective parties entered into the following stipulation:

* * * that the merchandise consists of cold rolled steel in coils, and that said steel is .01 but not over .05 inches in thickness and in width of ⅜ of an inch to 1¼ inch, and that the merchandise is not coated by dipping, galvanizing, sherardizing, electrolytic, or any other process with zinc, tin, or other metal, and does not contain more than ⅒ of 1 per centum of vanadium, nor more than ²⁄₁₀ of 1 per cent of tungsten, molybdenum or chromium, nor more than ⁶⁄₁₀ of 1 per cent of nickel, cobalt, or any other metallic element used in alloying steel or iron, and that it does not contain more than 5 per cent of phosphorus, or 1 per cent of magnesium or silicon.

This constituted plaintiffs' case in chief, and the trial was thereafter transferred to New York where two witnesses were called to testify in behalf of defendant.

The first of these, Martin G. McGuinn, is employed by the Acme Steel Co. as manager of National Accounts, eastern area, in which capacity he has general supervision of sales to all eastern companies having more than one plant. Mr. McGuinn has been with Acme Steel for the past 17 years and is familiar with steel strapping, such as is here involved. This is an item which he has sold in various parts of Pennsylvania, New Jersey, and New York for packaging uses— for strapping or baling various commodities.

Mr. McGuinn examined the invoice specifications of the instant merchandise and described them as standard specifications for steel strapping. He stated that steel strapping is always cut from a sheet of steel of 24, 36, or 48 inches in width, into widths of ⅜, ½, ⅝, ¾, 1½, and 2½ inches—and, in this respect and in its conformity to standard specifications, steel strapping differs from strip steel which any mill can make.

Mr. McGuinn testified, on cross-examination, that this strapping is a band steel; it might also be called hoop steel, and is normally sold in coils.

Defendant's witness, Almer Pearson, is the New York regional sales manager for the Signode Steel Strapping Co., with which he has been associated for 42 years. He stated that his company manufactures steel strapping and that plaintiffs' exhibit 1 appears to be a ¾-inch steel strapping, about 20/1000 of an inch thick, uncoated and blued. It is similar to merchandise which his company sells for the reinforcement of boxes, bales, cartons, bundles, and for bracing carload shipments of various commodities. It is also sold for baling purposes. It is generally known in the trade as steel strapping.

On cross-examination, Mr. Pearson stated that steel strapping is usually sold in coils which are mounted on some sort of a device container from which the strapping is drawn as needed. The strapping is tensioned with a tool and sealed and then broken or cut off. It is used "for strapping bales, bundles, boxes, containers of all types, and it even becomes a container itself sometimes by bundling up lumber, that is, the only thing holding a bundle of lumber together would be the steel strapping, or in bundles of wood flooring, or sometimes bundles of shingles, and the like, that have no other protection."

Citing the cases of *Standard International Corp.* v. *United States*, 33 Cust. Ct. 459, Abstract 58580, and *Pheoll Manufacturing Company* v. *United States*, 40 Cust. Ct. 223, C.D. 1987, plaintiffs argue that the instant merchandise, as described in the stipulation of the parties, is steel in strips within the contemplation of paragraph 316(a), as modified, *supra*, which is more specifically therein provided for than in paragraph 313, as modified, *supra*, as strips of steel.

Seemingly, the cited cases are ample authority for the position taken. The merchandise involved in *Standard International Corp.* v. *United States*, 33 Cust. Ct. 459, Abstract 58580, consisted of hot-rolled band iron in coils, which had been classified as steel bands or strips, not specially provided for, in paragraph 313 of the Tariff Act of 1930, and were claimed to be steel in strips within the provisions of said paragraph 316(a). The court, after reciting dictionary definitions of the words "band" and "strip" and considering discussions of the two provisions in issue in the Summaries of Tariff Information of 1929 and 1948, concluded both that the terms "bands" and "strips" are synonymous, and that the provisions of paragraph 316(a) are more specific than the provisions of paragraph 313, stating:

The provisions of paragraph 313, as modified, *supra*, are qualified by the words "not specially provided for," whereas paragraph 316(a), as modified, *supra*, is not. To be within the purview of said paragraph 316(a), it is necessary that the steel in strips meets certain specifications as to thickness and width, *inter alia*, conditions which are not required for classification in paragraph 313. * * *

The case of *Pheoll Manufacturing Company* v. *United States*, *supra*, followed this conclusion in holding that cold-rolled nut stock steel was more specifically provided for, as classified, in paragraph 316(a), as modified by prevailing trade agreement, as steel in strips not thicker than ¼ inch nor exceeding 16 inches in width, than in paragraph 315, as claimed, as steel rods, up to 6 inches in width, ready to be drawn or rolled into wire or strips. We there stated:

If the imported articles are strips, there can be no question but that they respond in every particular to the statutory description of steel in strips in paragraph 316(a), *supra*. They are not thicker than one-quarter of 1 inch, nor wider than 16 inches. They are in long lengths, in coils, and have been rolled.

*        *        *        *        *        *        *

Thus, from the point of view of common meaning, as judicially determined, the terms "rod" and "strip" have overlapping connotations, and as applied to the merchandise before us, either term might properly be employed to describe it. We are of opinion, however, that the conflict between the two provisions here in controversy, insofar as it relates to merchandise having the dimensions of that in issue, is more apparent than real, and that Congress, in specifying a

maximum thickness of one-quarter of 1 inch for strip steel, intended to encompass all steel in strips, within that outside dimension, regardless of whether they are also rods. It appears that comparable provisions in earlier tariff acts, to wit, paragraph 135 of the Tariff Act of 1909, paragraph 114 of the Tariff Act of 1913, provided for "steel in strips, not thicker than number fifteen wire gauge and not exceeding five inches in width." In the Tariff Act of 1922, the language was changed to its present wording. The new wording did more than effect an increase in the size of the steel strips described. It further expanded the scope of the provision by including *all* steel in strips meeting the new dimensions. If the congressional purpose was not thereby to make the provision completely inclusive within the expressed confines, no other reason for the changes suggests itself. It must, therefore, follow that an article which is both a rod and a strip, but is not thicker than one-quarter of 1 inch nor wider than 16 inches, is more specifically provided for in paragraph 316(a) than in paragraph 315.

Apparently there is no dispute between the parties in the instant case that the merchandise herein involved is in band or strip form, since both the classification and the contention refer to steel strips. There is, therefore, no need here to enter upon a discussion of the meaning of the term "strip," as developed in the cited cases, other than to observe that, in common understanding, as applied to metals, a strip is a narrow piece, relatively long in comparison to its width. *Burgess Battery Co.* v. *United States*, 19 Cust. Ct. 28, C.D. 1063.

What is urged upon us here by counsel for the defendant is that the competing provisions do not necessarily embrace the same article, subject only to limitations of dimensions, but that paragraph 313 refers to finished strips of iron or steel, whereas paragraph 316(a) provides for steel stripping, a material in the form of strips adaptable to various uses, and that the instant merchandise, manufactured in accordance with exact specifications, is more than mere material. This is an argument which was not advanced in *Standard International Corp.* v. *United States, supra*, wherein no brief was filed by counsel for the Government, but we entertain little enthusiasm for it here, in the light, especially, of our prior pronouncements.

It is, of course, obvious from the record in this case that the merchandise at bar would not fall within the category of a material susceptible of many uses. It was manufactured in accordance with standard specifications and thereby dedicated to its ultimate use as steel strapping for packaging purposes. However, we are of opinion that this is not a relevant consideration nor an appropriate basis for distinguishing between the statutory phraseology "steel in strips" in paragraph 316(a) and "strips of * * * steel" in paragraph 313. Certainly, we find no suggestion of such a distinction in the tariff history of the two provisions as set forth in the *Standard International Corp.* and *Pheoll Manufacturing Company* cases, *supra*, nor in the sense of the language employed to provide for steel strips in the two provisions in question.

The case of *Stone & Downer Co.* (*Signode Steel Strapping Co.*) v. *United States*, 21 CCPA 206, T.D. 46729, cited by counsel for defendant, is distinguishable, in that the court was there comparing a provision for band steel with a provision for bands or strips of steel, both of which were contained in paragraph 313 of the Tariff Act of 1922. The court found from the plain meaning of the language under consideration that band steel was the material from which bands or strips of steel are made. But the fact that a provision for band steel contemplates a material intended to be converted into a strip of steel, has little bearing upon the interpretation of a provision for "steel in strips."

As between "strips of steel" and "steel in strips," we are not persuaded that either phrase describes an article in a more or less advanced stage of manufacture, and since the merchandise at bar falls within the more narrow specification of being steel in strips not thicker than one-quarter inch and not exceeding

16 inches in width, it is provided for as claimed in paragraph 316(a), as modified, *supra*, dutiable at the rate of 6 per centum ad valorem when not thicker than 0.01 inch and at the rate of 8½ per centum ad valorem when thicker than 0.01 inch but not thicker than 0.05 inch.

Adverting now to the contention of plaintiffs that the merchandise at bar consists of hoop or band steel, wholly or partly manufactured into hoops or ties for baling cotton or other commodity within the provisions of paragraph 314 of the Tariff Act of 1930, as modified, *supra*, we think it suffices to observe that this is a provision which contemplates classification in accordance with chief use, and the instant record is inadequate to establish that the subject steel strips are chiefly used for baling cotton or other commodities. *Southern Scrap Material Co.* v. *United States*, 56 Treas. Dec. 141, T.D. 43514; *Biddle Purchasing Co.* v. *United States*, 60 Treas. Dec. 763, T.D. 45239; *Keller Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 428, T.D. 41343.

For all of the foregoing reasons, we find the merchandise here in issue to be steel in strips not thicker than ¼ inch and not exceeding 16 inches in width within the scope of paragraph 316(a), as modified, *supra*, dutiable at the rate of 6 per centum ad valorem if not thicker than 0.01 of an inch or at the rate of 8½ per centum ad valorem if thicker than 0.01 inch but not thicker than 0.05 inch. All other claims are, however, overruled.

Judgment will be entered accordingly.