(C.D. 2375)

Dorf International, Inc. *v.* United States

United States Customs Court, Second Division

(Decided November 21, 1962)

*Wallace & Schwartz* (*Earl R. Lidstrom, Joseph Schwartz,* and *Barnes, Richardson & Colburn* of counsel) for the plaintiff.

*Joseph D. Guilfoyle,* Acting Assistant Attorney General (*Alfred A. Taylor, Jr.,* and *Samuel D. Spector,* trial attorneys), for the defendant.

Before Lawrence, Rao, and Ford, Judges

Lawrence, Judge: The merchandise covered by the protests enumerated in the schedule attached to and made a part hereof which form the subject of this controversy is described on the commercial invoices as "striprolled Zincsheets in Ia lithographic quality for Offset Printing, raw, unfinished, plain," and is represented by plaintiff's exhibit 2, a rectangular shape, 26¾ inches wide, by 31 inches long, by twelve one-thousandths of an inch thick, composed of zinc. Other sizes were included in the importations.

The collector classified the merchandise as articles not specially provided for, partly or wholly manufactured, in chief value of zinc, in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the Sixth Protocol of Supplementary Concessions to

the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and imposed duty thereon at the rate of 21 per centum, 20 per centum, or 19 per centum ad valorem, depending upon the date of entry.

Plaintiff claims that the merchandise should be classified as zinc in sheets in paragraph 394 of said act (19 U.S.C. § 1001, par. 394), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, which is made dutiable at the rate of 1 cent per pound.

The pertinent text of the competitive statutes reads as follows:

Paragraph 397 of the Tariff Act of 1930, as modified by the sixth protocol, *supra:*

Articles or wares not specially provided for, whether partly or wholly manufactured:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Not wholly or in chief value of tin or tin plate:
Carriages, drays, &ast; &ast; &ast;

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Other, composed wholly or in chief value of iron, &ast; &ast; &ast; zinc &ast; &ast; &ast;_____ 21% ad val  20% ad val  19% ad val
[Depending upon date of entry.]

Paragraph 394 of said act, as modified by the General Agreement on Tariffs and Trade, *supra:*

Zinc:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

In sheets_____ 1¢ per lb.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

At the trial, plaintiff introduced one witness, Harry Kaufman, secretary-treasurer of Premier Graining Co., Inc., whose business is that of lithographic plate grinders.

Kaufman stated that his company imports merchandise, such as exhibit 2, for the purpose of "graining" it; "by mechanical means we rub an abrasive on the surface of the plate and create a mat finish, which mat finish renders the plate receptive to certain chemicals used in the process of lithography."

The Government called two witnesses, William E. Coolbaugh, plant metallurgist for 11½ years for Matthiessen & Hegeler Zinc Co., and Walter J. Mosbach, who, for some 6 years, had been employed by said Matthiessen company as salesman, and previously was an office manager and foreman for another company not named.

Coolbaugh testified in substance that he had been a supervisor of "rolling of zinc"; that there are two methods of rolling zinc, sheet roll-

ing and strip rolling. In describing the difference in the two processes, the witness stated that strip rolling is rolling through the mill in one direction only and, by that process, "We have a coil or strip of zinc." Sheet rolling involves turning the sheets and cross-rolling them "onto pack rolls, and roll a number of sheets at one time." In other words, by cross-rolling, a sheet of zinc is produced. At this point, plaintiff stipulated that the subject merchandise was made by a process known as "strip rolling."

Mosbach testified to the differences between strip zinc and sheet zinc in physical characteristics as well as in price; that it cost 7½ times as much to produce sheet zinc as it does strip zinc; sheet zinc has more tensile strength and is a tougher metal than strip zinc. The witness also stated that there was a difference in ductility and resiliency in the two products, there being a different grain structure, due to the different methods of rolling.

He also pointed out that strip zinc is produced and sold in narrower widths than sheet zinc; the latter is produced in wider widths not available in strip.

Defendant's witness Coolbaugh was recalled and testified that the difference in tensile strength between sheet zinc and strip zinc was due to the additional rolling process applied to sheet zinc, adding that the term "sheet," as used by him, meant zinc rolled by a pack-rolling or cross-rolling process, whereas the term "strip" meant zinc produced by a strip-rolling process.

Throughout their testimony, Coolbaugh and Mosbach have repeatedly used the terms "strip zinc" and "sheet zinc" and the process by which those articles were made. It is observed, however, that the statutory provision relied upon by plaintiff does not specify sheet zinc, but provides for "Zinc: * * * In sheets." The record is silent, however, as to whether there is a commercial distinction between zinc sheets and zinc in sheets. Note *Seligmann et al.* v. *United States*, 6 Ct. Cust. Appls. 85, T.D. 35336, wherein the court pointed out that "Proof that the merchandise is commercially known as 'sheet aluminum' is not proof that it is known as 'aluminum in sheets,' which would be necessary."

On many occasions, the courts have observed that a sample may be a potent witness. *Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676. The exhibit in this case, a rectangular piece, approximately 26¾ inches wide, by 31 inches long, and twelve one-thousandths of an inch thick, is our conception of a sheet and not a strip. The mere fact that it may have been manufactured by a process which is also utilized in producing strip zinc does not thereby deprive it of its appropriate description as zinc in sheets.

Plaintiff invites our attention to the case of *Burgess Battery Co.* v. *United States*, 19 Cust. Ct. 28, C.D. 1063, wherein we held that certain

imported coiled zinc, measuring 7⅝ inches wide, 0.070 of 1 inch thick, and approximately 40 feet long, was not classifiable as zinc in sheets. After finding that the evidence failed to establish that the merchandise was commercially known as "zinc in sheets," we turned to the common meaning of the term, relying upon the basic principle that tariff laws are construed in the language of commerce, which is presumed to have the same meaning as is commonly and ordinarily understood. Upon that phase of the case, we quoted the following—

The terms "sheet" and "strip" are commonly defined as follows:

Webster's New International Dictionary, Second Edition (1943):

*sheet:*
   10.  A broad, thinly expanded portion of metal or other substance; * * *
*strip:*
   1.  A narrow or relatively long piece; * * *
\*      \*      \*      \*      \*      \*      \*
   10.  A rolled piece of metal, esp. iron or steel, of the thickness of sheet metal but relatively long and narrow.

Funk & Wagnalls New Standard Dictionary of the English Language (1942 Ed.):

*sheet:*
   1.  A very thin and broad piece of any substance; * * *
   2.  A broad, flat surface; * * *
*strip:*
   1.  A narrow piece comparatively long; * * *

The Oxford Dictionary (1914 Ed.):

*sheet:*
   9.  A relatively thin piece of considerable breadth of a malleable, ductile, or pliable substance. * * *
*strip:*
   1.  \*      \*      \*      \*      \*      \*      \*
      d.  A narrow piece of board, metal plate, etc. * * *

We then concluded that the merchandise described in that case would be within the concept of the word "strip" and, for the same reasons, would be excluded from the term "sheet."

In the *Burgess* case, we referred to *Universal Shipping Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 245, T.D. 33479, and other cases in which the courts cited with approval some of the definitions of "sheet" and "strip," above set forth.

From an examination of the sample, exhibit 2, and the testimony herein, we are clearly of the opinion that the importations consist of zinc in sheets within the common acceptation of that term. We, therefore, sustain the claim of plaintiff that the merchandise is properly classifiable as zinc in sheets in paragraph 394, *supra*, and subject to duty at the rate of 1 cent per pound. That claim of plaintiff is sustained, and judgment will issue in accordance with the views above expressed.