(C.D. 2721)

PREMIER GRAINING COMPANY, INC., ET AL. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 27, 1966)

*Wallace & Schwartz* (*Earl R. Lidstrom* of counsel) and *Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiffs.

*John W. Douglas*, Assistant Attorney General (*Herbert L. Warren* and *Sheila N. Ziff*, trial attorneys), for the defendant.

Before RAO, FORD, and RICHARDSON, Judges

RICHARDSON, Judge: The merchandise of these consolidated protests is described on the invoices as "Zinc-Sheets in Ia lithographic quality for Offset Printing, raw, unfinished," which is shipped in rectangular flat shapes of various sizes and dimensions including the size 26¾ by 31 inches by $^{12}/_{1000}$ of an inch. This merchandise, of West German origin, was entered at Chicago and New York, and classified in liquidation as manufactures of zinc, not specially provided for, under 19 U.S.C.A., section 1001, paragraph 397 (paragraph 397, Tariff Act of 1930), as modified in T.D. 54108, and assessed with duty at the rates of 21, 20, or 19 per centum ad valorem, depending upon the date of entry. It is claimed that the instant merchandise is properly dutiable at the rate of 1 cent per pound as zinc in sheets under 19 U.S.C.A., section 1001, paragraph 394 (paragraph 394, Tariff Act of 1930), as modified in T.D. 51802.

The case involves the construction of the words "zinc in sheets" as they are used in paragraph 394. The issue here is whether these words have a restricted meaning as a commercial designation of merchandise manufactured in a particular manner, or a broad meaning relating to shape and dimensions of merchandise irrespective of the method employed in its manufacture. It is established in the evidence that the subject merchandise is identical to that which was the subject of decision in the case of *Dorf International, Inc.* v. *United States*, 49 Cust. Ct. 141, C.D. 2375, wherein it was found that the merchandise is produced by a process which is known as strip rolling. In the *Dorf International* case this division held that such merchandise came within the ordinary meaning of the words "zinc in sheets." The court

there pointed out that the commercial designation "zinc sheets" was not shown to be the same as the term "zinc in sheets," citing the case of *Seligmann et al.* v. *United States*, 6 Ct. Cust. Appls. 85, T.D. 35336, wherein our appeals court held that a commercial designation of merchandise as sheet aluminum was not proof that such commercial designation applied to the tariff term aluminum in sheets.

The instant case is in effect a retrial of the issue as presented in the *Dorf International, Inc.*, case, the record in which case has been incorporated into the case at bar. The Government now claims to be in a position to establish that the tariff term "zinc in sheets" is a commercial designation different in meaning from the common meaning of the term and not embracing the merchandise at bar. Toward such end, the Government has adduced additional evidence in the instant record in the form of testimony of four witnesses drawn from various segments of the zinc industry, namely, Messrs. Herman D. Carus, executive president of Mathiessen & Hegeler Zinc Co., Ernest H. Klein, manager of the metal division, sales department, of New Jersey Zinc Co., Joseph E. Smith, president of Smith & McCrorken, Inc., and Orton P. Camp, president of Platt Bros., Inc. In addition, the Government has placed in evidence 1929 price lists issued by the Illinois Zinc Co. The varying experiences of the Government's witnesses as smelterers, mill rollers, and warehousers of raw zinc products all predate the use of the statutory words "zinc in sheets" in the 1930 act. On the matter of trade nomenclature, a fair summary of the pertinent testimony of these witnesses is to the effect that the term "zinc in sheets" is used in the trade interchangeably with the term "zinc sheets" or "sheet zinc" to describe the zinc metal product produced by means of the cross rolling or pack rolling method, that the term does not have reference to the form of the finished product or its dimensions, that the merchandise before the court is not produced by the cross rolling or pack rolling method but is rolled in one direction only by means of the strip rolling method from which method the merchandise derives the trade name "strip zinc," and that "strip zinc" is never referred to in the trade as "zinc sheet," "sheet zinc," or "zinc in sheets."

As to the documentary evidence, defendant's exhibit A constitutes price lists of "sheet zinc" and "strip and ribbon zinc," respectively. On the "sheet zinc" price list the Illinois Zinc Co. describes by name the products which it made at that time (April 4, 1929) using the generic term "rolled sheets" in the place of the terms "sheet zinc" and "strip zinc." In plaintiff's exhibit 3, which is the General Services Administration Zinc Specification QQ-Z-301b of July 24, 1957, the terms "sheets" and "strips" are used with reference to form and dimension and not with reference to manufacturing methods. One of the Government's witnesses admitted that the Government constitutes a

portion of the trade in its purchases of rolled zinc. This same witness testified that he participated in the formulation of these specifications and, further, that he could not recall ever having seen an order for "zinc in sheets." And, according to the testimony of all of the government witnesses, the bills of lading and purchase orders issued by their respective firms describe zinc rolled by the cross rolling method as "sheet zinc."

The record as now constituted does not furnish the court with clear and convincing evidence of commercial designation for the tariff term "zinc in sheets," precluding its judicially determined common meaning. Apart from a consideration of the competency of the Government witnesses to discuss trade usage of the term in question on any level other than a local usage (a point pursued by plaintiff's counsel), there is this nagging doubt as to the all-embracing nature of commercial designation brought about by the total absence of use of the term "zinc in sheets" in any of the commercial paper handled by the firms from which the Government's witnesses come. We can imagine no more convincing demonstration of commercial usage than that emanating from the language of billings, price lists, purchase orders, invoices, bills of lading, and the like. Such commercial paper, like the people who use them, also speaks the language of commerce. From what use we have seen of the usage of the term "sheets" in evidence introduced by defendant, it has a generic use in the zinc industry which covers more than the product commercially designated as "sheet zinc" or "zinc sheet." At least, the evidence before the court does not dispel such other use.

In the enactment of tariff legislation, Congress is deemed to be conversant with and to speak in the language of commerce, which language is presumed to be the same as that in common usage unless the contrary is clearly shown by the party contending otherwise. *Acker* v. *United States*, 1 Ct. Cust. Appls. 328, T.D. 31431. The logical place to start with in considering and determining the impact of commercial designation, if any, upon the language of tariff provisions is, of course, in the *beginning*. In the instant case, the *beginning* is not with the Tariff Act of 1930 where, as regards the zinc metal and metal products paragraph, nothing more disquieting appears to have occurred in the interlude between legislative consideration of the paragraph and passage of the act than the addition of dross and skimmings to the paragraph by way of transfer of these items from the free list of the 1922 act.

A dutiable provision for "zinc in sheets" has been in every one of our tariff acts since the act of August 30, 1842.* It would seem that this early colonial period in our history marks the incipiency of the zinc rolling industry in this country inasmuch as the only prior tariff pro-

---

*H.R. Doc. No. 671, 61st Cong., 2d Sess. 125, 146, 156, 165, 208, 235, 289, 329, 385, 477, 562, 721 (1909) ; 38 Stat. 130 ; 42 Stat. 888 ; 46 Stat. 628.

vision for zinc is the provision in the act of April 27, 1816, under the free list. In the act of 1842 provision, "zinc in sheets" was the sole occupant of the paragraph. Through successive tariff acts enacted over the years, various items of zinc metal were added to the paragraph as well as items of other zinc metal products. Research has disclosed no occasion which seems to have called the attention of the Congress to the necessity for discussion or consideration of the precise meaning of the words "zinc in sheets." But it is reasonable to assume that whatever meaning these words possess under the 1930 act, they have had since the *beginning*. And the evidence adduced here by defendant, among other things, does not purport to span the spread of years in between.

Far more significant than the events which preceded the enactment of the 1930 act, insofar as legislative use of the nomenclature in question is concerned, was the attention given to the zinc metal and metal products paragraph by Congress preceding the enactment of the 1922 act. In 1921, the House passed and sent to the Senate, H.R. 7456, paragraph 391 of which, read as follows:

Zinc in blocks or pigs and zinc dust, 1⅜ cents per pound; in sheets, 1⅝ cents per pound; in sheets coated or plated with nickel or other metal, or solutions, 1¾ cents per pound; old and worn-out, fit only to be remanufactured, 1 cent per pound: *Provided*, That for a period of two years beginning on the day following the enactment of this Act the rates of duty shall be as follows: On zinc in blocks, pigs, or slabs, and old and worn-out zinc fit only to be remanufactured, 2 cents per pound; zinc in sheets, plates, strips, or coils, plated with nickel or other base metals, or in fabricated form, and zinc dust, 2⅞ cents per pound.

In the Senate, the proviso seems to have become a casualty to concerns about difficulties of interpretation and rate inequalities voiced by the Tariff Commission (Summary of Tariff Information, 1921, relative to H.R. 7456, pp. 545–549) and the zinc industry represented by the American Zinc Institute (Senate Finance Committee Hearings on H.R. 7456, 67th Cong., 2d Sess., volume III, pp. 2067–2069, S. Doc. 108), and was dropped from the paragraph in the enactment into law of the bill H.R. 7456 as the Tariff Act of 1922. However, the provision for slabs survived the excision of the proviso and was added to the paragraph along with rate increases. Thus, there emerged from the use of the proviso, albeit but for a brief time, a clear congressional intent to employ the word "sheets" in its ordinary sense. By application of the rule *"noscitur a sociis"* which is apropos here, it is clear that Congress was concerned with physical forms of metal and metal products and not with methods of manufacture. And it should here be pointed out that the zinc industry evidenced the same concern in its brief, grouping the items of products both within and without the proviso under the general heading of "Sheets" or "Sheets, coated," in its request for specific rate protection of 3¾ cents per pound. (See reference to

and brief of American Zinc Institute, Senate Finance Committee Hearings, *Id.* at pp. 2071, 2072, 2074).

Legislative approval of judicial or quasijudicial determination tends to support the common meaning usage of the term "zinc in sheets." In a case arising under the jurisdiction of the Secretary of the Treasury, a provision for "zinc in sheets" under the Tariff Act of 1883 was construed. In T.D. 8880 (*re Wittemann Bros.*), the importer sought to have merchandise classified under the "zinc in sheets" paragraph which the appraiser reported to consist of sheets of zinc manufactured for printing purposes and cut in the forms and sizes to suit the special purposes for which they were designed. The appraiser made mention of the fact that the merchandise was not the "sheet-zinc" of commerce. The Secretary of the Treasury found the merchandise to be a manufacture of zinc and sustained the duty assessment under the basket clause not because the merchandise was found not to be "sheet-zinc," but because it had been treated with acid and polished. Thus, it seems clear from the holding in the *Wittemann* case that, if the instant merchandise in its raw, unfinished state, as it is described in the invoices, had been before the Secretary of the Treasury at the time of the decision in that case, the Secretary would have undoubtedly found the merchandise to be zinc in sheets under paragraph 192 of the act of 1883 even if it was not the "zinc sheet of commerce" as that term was then understood.* The holding in the *Wittemann* case received express legislative approval 6 years later in the passage of the act of August 27, 1894 (Tariff Act of 1894—28 Stat. 509, 520). The provision for zinc in sheets in that act was contained in paragraph 175 which read:

Zinc in sheets, *not polished nor further advanced than rolled,* one and one-fourth cents per pound. [Emphasis added.]

This addendum, like the basis of decision in the *Wittemann* case which it adopts, would hardly have been necessary if Congress regarded the words "zinc in sheets" to have reference only to a commercial designation of a particular kind of rolled sheet product. Congress must be deemed to have acted with an awareness that, in the *Wittemann* case, the merchandise was not the "zinc sheet of commerce."

It will be observed that, in the act of July 24, 1897 (Tariff Act of 1897—30 Stat. 151, 167), the addendum of the 1894 act to the "zinc in sheets" provision was dropped in the enactment of paragraph 192. The language employed therein reverted to the expression "Zinc . . .

---

*There is no presumption that commercial designation continues from one tariff act to another. *United States* v. *Jules Raunheim,* 17 CCPA 425, 431, T.D. 43867, and cases therein cited. See and compare *Langerman & Petty* v. *United States,* T.D. 14840, reversed 75 Fed. 1, where it was established that merchandise commercially known as zinc sheet under the Tariff Act of 1890 was such as was bought and sold by weight and not by measurement.

in sheets" that was used in the 1890 act and acts prior thereto. However, later tariff act provisions expressly removed to some extent, if not entirely, the limitations imposed in paragraph 175 of the act of 1894, and, by the decision in the *Wittemann* case, in the broadening of the description of the kinds of merchandise included within the "sheets" provision. Thus, in the act of August 5, 1909 (Tariff Act of 1909—36 Stat. 11, 32) paragraph 194 read:

Zinc . . . in sheets, one and five-eighths cents per pound; *in sheets coated or plated with nickel or other metal,* or solutions, one and three-fourths cents per pound . . . . [Emphasis added.]

In the act of October 3, 1913 (Tariff Act of 1913—38 Stat. 114, 130), the addendum to the "sheets" provision of the 1909 act was dropped. However, in the act of September 21, 1922 (Tariff Act of 1922—42 Stat. 858, 888), the addendum of the 1909 act was restored in restricted language in paragraph 395 which read:

Zinc . . . in sheets, 2 cents per pound; *in sheets coated or plated with nickel or other metal (except gold, silver, or platinum), or solutions,* 2¼ cents per pound . . . . [Emphasis added.]

And the provision in the 1922 act was carried unchanged into the 1930 Tariff Act in paragraph 394 (46 Stat. 590, 628).

In the light of the foregoing tariff provisions, it appears that over the years, since the decision in the *Wittemann* case, the question of the *degree* of manufacture rather than *method* of manufacture of rolled sheets of zinc has had a profound influence upon congressional thinking in the enactment of the various tariff provisions pertaining to this merchandise. And it has not been suggested to us, in the evidence at bar or otherwise, that the properties and characteristics of commercially designated zinc sheet or sheet zinc as those terms are understood under the 1930 act are such that they embrace the merchandise in issue.

Other cases, in which the physical form of zinc metal products rather than manufacturing methods, appear to have shaped the course of the decisions rendered are *Langerman & Petty* v. *United States*, 75 Fed. 1, reversing T.D. 14840 (zinc sheets), *Stengel* v. *United States*, 2 Ct. Cust. Appls. 137, 138, T.D. 31663 (sheets of zinc enameled), *Lunham & Reeve, Inc.* v. *United States*, 3 Cust. Ct. 293, C.D. 258, affirmed, 28 CCPA 268, C.A.D. 153 (zinc in strips in coils), and *Burgess Battery Co.* v. *United States*, 19 Cust. Ct. 28, C.D. 1062 (strip zinc in coils).

We are of the opinion that the foregoing considerations and authorities lead to the conclusions that a commercial designation in derogation of the common meaning of the term "zinc in sheets" has not been established under the evidence before the court, and that the tariff provision for "zinc in sheets" is not susceptible of proof of

commercial designation, and we so hold. Plaintiffs' protests are, therefore, sustained.

Judgment will be entered accordingly.