**PREMIER GRAINING COMPANY, Inc.**
v.
**UNITED STATES.**
**C.D. 3471; Protest 66/9997–14929.**

United States Customs Court,
·Second Division.
June 12, 1968.

Schwartz & Lidstrom, Chicago, Ill. (Earl R. Lidstrom and Joseph Schwartz, Chicago, Ill., of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Sheila N. Ziff, trial attorney), for defendant.

Before RAO, FORD, and RICHARDSON, Judges.

RICHARDSON, Judge:

The merchandise of this importation, described on the invoice as zincsheets, raw, unfinished, and imported in various sizes, was classified in liquidation as manufactures of zinc, not specially provided for, under 19 U.S.C.A., section 1001, (paragraph 397, Tariff Act of 1930) as modified by T.D. 54108, and assessed for duty at the rate of 19 per centum ad valorem. It is claimed by the importer that the merchandise is dutiable as zinc in sheets under the provisions of 19 U.S.C.A., section 1001, paragraph 394 (paragraph 394, Tariff Act of _930) as modified by T.D. 51802 at the rate of 1 cent per pound.

The record shows that the involved merchandise is what is known in the zinc trade as strip zinc, cut to lengths, so designated because of the way it is manufactured, that is, the zinc is rolled in one direction only. Identical merchandise involving the same claim for classification has been before this court in two cases before this case, wherein the court concluded that the merchandise was properly classifiable as claimed. See Dorf International, Inc. v. United States, 49 Cust.Ct. 141, C.D. 2375, and Premier Graining Co., Inc., et al. v. United States, 57 Cust.Ct. 32, C.D. 2721. And the records in these cases have been incorporated in the instant record.

The Government opposes classification of the subject merchandise as claimed for the same reason as it advanced in Premier Graining Co., Inc., et al. v. United States, supra, namely, that the provision in paragraph 394 for "Zinc * * * in sheets" is a commercial designation for a particular zinc metal product which does not include strip rolled zinc.

At the trial of the instant case plaintiff adduced the testimony of Harry Kaufman, secretary-treasurer of the plaintiff firm to establish identification of the instant merchandise with that the subject of the incorporated record in C.D. 2375, supra, and on cross-examination of the Government's witnesses, ad-

duced a price list issued by the Illinois Zinc Co. in 1929 (plaintiff's exhibit 6) and two other price lists issued by The American Zinc Products Co. in 1942 (plaintiff's exhibits 4 and 5). The substance of plaintiff's evidence is that the instant merchandise is the same as that covered by C.D. 2375, and that no use is made on the price lists identified as plaintiff's exhibits 4, 5, and 6 of the term zinc in sheets.

The Government called as witnesses Robert S. Graham, a former estimator in the sales department of The American Zinc Products Co., William F. Sennett, former sales manager and vice president of Illinois Zinc Co., Howard Mellor, former vice president and Eastern sales manager of Illinois Zinc Co., Ernest H. Klein, manager of the metal division of New Jersey Zinc Company, Orton P. Camp, president and treasurer of The Platt Bros. & Co., and Robert G. Kenly, former vice president of New Jersey Zinc Co. The Government also adduced in evidence during the testimony of Mr. Sennett, previously known by the name spelling of "Synnott", a booklet of Reference Data on Eraydo, a zinc base alloy produced by Illinois Zinc Co., which booklet was received in evidence as defendant's exhibit G. And the record in C.D. 2721 was incorporated in the instant record on motion of Government counsel. The gist of the Government's evidence is that the aforementioned witnesses are conversant with the zinc industry and terminology employed in the trade with reference to rolled zinc products going back before 1930, that the term "zinc in sheets" was used interchangeably in the trade with the terms "sheetzinc" and "zincsheet" prior to 1930 only to describe zinc rolled by the pack or cross rolled method, that such usage was definite, uniform, and general throughout the zinc trade in the United States, that the zinc trade was concentrated around the four principal companies from which the witnesses in this and the incorporated cases came, and that reference to the metal Eraydo in the trade as practiced by Illinois Zinc Co. was made in terms of "In coiled strip or strip cut to length" and "In sheets."

On the augmented record before the court the issues, concerning which defendant has the burden of proof and persuasion, are whether the evidence establishes a commercial designation for the term "Zinc * * * in sheets" which excludes the merchandise at bar, and whether the term "Zinc * * * in sheets" as used in paragraph 394 embraces only imported merchandise commercially designated as such.

Assuming that "The collective experience of the witnesses herein represents the *entire* zinc trade on a national level with respect to the manufacture of zinc by the cross-rolled or pack-rolled method, and almost the entire zinc trade with respect to zinc produced by the strip-rolled method" as counsel for the Government argues in the brief on page 7, the evidence in the augmented record is no more convincing of interchangeable usage of the term "zinc in sheets" as a commercial designation with the terms "sheetzinc" and zincsheet", in our opinion, than was the evidence on this point in C.D. 2721. In C.D. 2721 the court was impressed with and influenced by the fact that no usage of the term "zinc in sheets" was shown to have been made on commercial paper handled by the firms from which the witnesses came, in arriving at the conclusion in that case that the record was lacking in convincing evidence of commercial designation for that term. We are similarly influenced by the lack of such evidence in the instant record.

The additional price lists placed in evidence in the instant record as plaintiff's exhibits 4 and 5, said to be indicative of usage in the pre 1930 era, evince a total lack of usage of the term "zinc in sheets" in documentation by The American Zinc Products Co., one of the principal rolling mills whose practices were not adverted to in any of the previous trials. Defendant undertakes to compensate for the general lack of documentation of usage of the term "zinc in sheets" through use of reference data

on Eraydo set forth in defendant's exhibit G. However, Eraydo is not the metal or metal product with which the court is concerned; and the data referred to is not commercial paper reflecting how an article is bought and sold in the market place. And the patented feature of the metal Eraydo suggests usage which is peculiar to the producer Illinois Zinc Co. But even if the meaning attached to Eraydo is the same as that attached to sheet zinc and strip zinc, respectively, usage of the word "sheets" in the reference data on Eraydo is not without ambiguity. On page 5 of exhibit G we find the following statements:

> *Eraydo* is furnished in flat sheets and coiled strips. * * *

> *Eraydo* in ingots or slabs * * * is available. * * *

> *Eraydo* is also available in the form of rods, in mill lengths and coils.

Hence, the concept of form also governs the usage of the word "sheets" as applied to the metal Eraydo, the same as we have previously found to govern the usage of the word "sheets" in paragraph 394.

■ We think the overriding consideration here on the matter of commercial designation is the legislative intent underlying the enactment of the tariff term "Zinc * * * in sheets" in paragraph 394 of the 1930 Act. The doctrine of commercial designation is no more than one of the rules of construction and may be called upon only for the purpose of ascertaining the true intention of the Congress with reference to particular legislation and so as not to vitiate the purpose of the statute as clearly expressed in its language. United States v. Allen Forwarding Co., 42 CCPA 33, 36, C.A.D. 566. And in this connection—

> The legislative meaning is to be extracted from a statute as a whole. Its clauses are not to be segregated; but every part of a statute is to be construed with reference to every other part and every word and phrase in connection with its context, and that

construction sought which gives effect to the whole of the statute—its every word, * * *. [Encyclopedia of United States Supreme Court Reports, Volume 11, page 119.]

With these principles in mind, we undertook in C.D. 2721 to ascertain the legislative intent underlying the provision for "Zinc * * * in sheets" in paragraph 394, noting in the process that the term is one which was carried into the 1930 Act intact from the 1922 Tariff Act, wherein Congress evinced an intention to deal with various forms of zinc metal products and degrees of their manufacture rather than with the methods of manufacture employed. And our inquiry in that case led us to conclude there, for such reasons, among others, that the term in question was not susceptible to commercial designation.

■ We have reexamined our reasoning and conclusion in C.D. 2721 on this facet of the case in the light of the second contention advanced here by the Government and find no reason prompting us to depart therefrom. It remains our opinion that it was the intention of Congress that paragraph 394 of the 1930 Act should embrace zinc metal and metal products in the specified forms mentioned in the statute, and further, that commercial designation is of no significance in the ascertainment of articles coming within the ambit of the paragraph. And support for this view is to be found, among other places, in the language of our appeals court, construing the phrase "zinc in sheets" in an earlier tariff act. In Stengel v. United States, 2 Ct.Cust.Appls. 137, 138, T.D. 31663, our appeals court stated:

> It is obvious, both from the term employed, "zinc in sheets," as well as from the correlation of the terms employed in the paragraph, that the merchandise intended to be covered by this paragraph was sheets of zinc which retained their form and identity as such and were intended to be used as material for manufacturing articles as distinct from articles of manufacture ready for use.

This language formed the basis of the court's determination in that case that sheets of enameled zinc, in the form and shape of, and ready for use as wall and ceiling tiles, had been advanced by process of manufacture to a degree where they could no longer be said to be "zinc in sheets" within the ambit of paragraph 194 of the Tariff Act of 1909, the language of which insofar as is here pertinent, is the same as the language of paragraph 394.

At most it is here contended by the Government that the term "Zinc * * * in sheets" is but an alternate designation for a particular zinc metal product known to commerce, the other commercial designations for such product being "sheetzinc" and "zincsheet". It should be noted that the former term is a *descriptive* phrase, while the latter terms are *denominative* terms. This difference in and of itself is ample reason for us not, without the most cogent persuasion here lacking, to ascribe to Congress an intention to employ a phrase of considerable latitude and dual meaning, as is the case with a descriptive phrase, to affix a meaning of limited proportions to a particular tariff article, when words of narrow comprehension, as is the case with denominative terms, were available to Congress to describe such article. The fact that Congress chose the broad descriptive phrase over the narrow denominative terms is an indication, in our opinion, of legislative intention not to circumscribe the paragraph by commercial designation.

Some comments are in order at this point in regard to reasoning employed by this court in the decision in C.D. 2721. In its brief the Government takes issue with some of the reasons assigned by the court in support of the conclusion that the provision for "Zinc * * * in sheets" in paragraph 394 is not susceptible to proof of commercial designation. In particular, attention is called to our reference to a proposed provision amending the 1922 Tariff Act by the addition of a provision for zinc in plates, strips or coils to the existing provision

for zinc in sheets which was deleted before passage of the 1922 Act. We had indicated this activity to reflect legislative intent to use the word "sheets" in its ordinary sense. Counsel for the Government argues from the failure of passage of the proposed amendment that it was not the intention of Congress to fix meaning for the term "Zinc * * * in sheets" in terms of descriptive meaning or in terms of degree of manufacture, and, that the meaning of the term would hardly be conclusive by virtue of such an event.

We think it is enough to say that all that failure of passage of the measure in its entirety (one item was passed) would indicate under the circumstances is that Congress decided to settle for fewer enumerations of forms of zinc metal and metal products than had been originally proposed. But the diminution or dilution of the original proposal would in no way detract from the impact of language upon legislative deliberations. It is sufficient for our purposes that this interlude reveals how Congress was handling the language of the paragraph. And we would be hard pressed to find a more apt occasion for application of the doctrine that the meaning of a word may be known from accompanying words than that furnished by the association of the word "sheets" with the words "plates," "strips," "coils," and "slabs" in the legislative deliberations on H.R. 7456.

Counsel for the Government also questions our reference in C.D. 2721 to the *Wittemann* case, reported in T.D. 8880, as having influence on the 53rd Congress in the enactment of an amendment to the "zinc in sheets" provision of the 1894 Tariff Act. Counsel points out that this particular provision had not been amended under the 1890 Tariff Act, which was 2 years after the decision in *Wittemann*, that counsel has no indication that Congress had ever been apprised of the *Wittemann* case, that no reference to the case could be found in the Tariff Information Surveys or other publications prepared for the

use of Congress in considering tariff legislation, and that it is not clear from the ruling in *Wittemann* whether the decision turned upon the basis that the sheets had been treated with acid and polished, or because they had been specially manufactured for printing purposes and cut to special forms and sizes.

We do not purport to know why Congress delayed amending the "zinc in sheets" provision, *vis-a-vis* the *Wittemann* case, until the Act of 1894. Perhaps as counsel suggests the lack of reference to the case in "Tariff Information Surveys or other publications prepared for the use of Congress in considering tariff legislation" obscured the case and its principle from legislative view beyond enactment of the Tariff Act of 1890. But then, counsel does not indicate in the brief that such surveys and other publications had in fact been compiled for congressional use as of the period preceding the 1890 Act.[1] We note that the Tariff Commission was itself in its infancy at that time, having been created by Act of Congress in 1882 and by that Congress charged with the task of investigating the feasibility of Congress undertaking the revision of the tariff laws. And in discharging this duty prior to the passage of the 1883 Tariff Act it is worthy of note that the Tariff Commission, in its report to the Committee on Ways and Means of the House of Representatives, indicated that it had examined *numerous decisions of the Treasury Department* (under the metal schedule, among others) and had proposed changes "in conformity with the spirit of the law as at present administered." [2] This was in 1882. And at that time as well as subsequent to the passage of the Act of 1894, the Secretary of the Treasury had appellate jurisdiction over decisions rendered by collectors of customs under the customs laws.

One need only read the hearings before the House Committee on Ways and Means during the period relative to tariff revision to be apprised of the fact that Congress obtained the advice of the Secretary of the Treasury, among others, on matters affecting the administration of the tariff laws. As to Treasury Department decisions, Congress undoubtedly had access to the publication entitled "Index of Decisions made by the Secretary of the Treasury as to the Assessment of Duty on Imported Goods under the Tariff Act of March 3, 1883, to January 1, 1890" covering the period from March, 1883 to January, 1890, published in 1890 in Washington, D. C., by the Government Printing Office. This publication, indexed alphabetically according to subject matter contains a reference to the *Wittemann* case citation under the heading "Zinc: * * * Polished plate, for printing purposes." In view of the availability to Congress of citation to the *Wittemann* case, and the accessibility of the Secretary of the Treasury to the various legislative committees undertaking the study of tariff revision, it is not difficult to understand how the views and posture of the Secretary of the Treasury and the department which he headed, on matters pertaining to tariff legislation, could get across to the Congress.

As regards "zinc in sheets," twice within a decade the Secretary of the Treasury had been compelled to rule, at the instance of importers at both ends of the country, that polished zinc plate was not "zinc in sheets" as claimed, but was a manufacture of zinc as classified by the collectors involved (see T.D. 4726 and compare with T.D. 8880). Hence, the time was propitious with the advent of *Wittemann* for the enactment into organic law of the principle derived from these rulings. Consequently, who can seriously question that the language,

---

1. There appears to have been no such compilations as of this early date. See "Foreword" in Summaries of Trade and Tariff Information [TSUS—1966–1968] page iii, indicating that the first publica-

tion of "summaries" by the Tariff Commission took place in 1920.

2. Report of the Tariff Commission (1882), page 17, H.Mis.Doc. 6, pt. 1.

"not polished nor further advanced than rolled" which was added by Congress to the "Zinc in sheets" provision of the 1894 Act was aimed at and ratified the principle enunciated in the *Wittemann* case, in view of the fact that this specific qualifying and limiting language appears at no other juncture in the tariff history of the provision for "zinc in sheets"?

Also, it seems clear to us that the fact of polishing and acid treating of the zinc sheets in *Wittemann* influenced the Treasury Secretary's decision as much as if not more than anything else in the case. He singled out this phase of the case for observation himself, whereas, as to the other facets of the case, he was merely repeating the observations of the official whose report he was reviewing. In any case, whether one considers the fact of polishing the sheets to be more prominent than other manufacturing processes in the fact pattern developed in *Wittemann*, or *vice versa*, the point of *Wittemann* is that it treats the traditional language "zinc in sheets" as being descriptive and not denominative. Otherwise, it would not have been necessary for the Secretary of the Treasury to determine anything other than the fact that the merchandise there involved was not the "sheetzinc of commerce."

Finally, we do not wish to be understood as requiring in C.D. 2721, as defendant seems to have suggested, a proponent of the commercial designation theory of classification to adduce evidence of commercial usage under tariff acts prior to the 1930 Act. Indeed, we recognized in that case the fact that a particular commercial designation does not continue necessarily from one tariff act to another. We sought in C.D. 2721 to emphasize the historical significance of the tariff language "zinc in sheets" *vis-a-vis* the concept of commercial designation. And we think this is a legitimate judicial purpose. For if our assessment of this long standing tariff language is to be made in context and to have any meaningful application to importations under the 1930 Act, it is essential that we do not strive to divorce ourselves from knowledge of how such language has been handled in past tariff history, irrespective of any claim of commercial designation.

For the reasons stated, we find that the language "Zinc * * * in sheets" contained in paragraph 394 is not exclusionary perforce of commercial designation. And in view of the fact that the augmented record before us shows the merchandise at bar to be zinc in the form of sheets as they come from the rolling mill, the claim of the plaintiff for classification of such merchandise under paragraph 394 as "Zinc * * in sheets" is sustained.

Judgment will be entered accordingly.

RAO, C. J., and FORD, J., concur.